FELICIANO ET AL., APPELLANTS, *v.*
MOORE ET AL., APPELLEES.

(No. 78AP-609—Decided April 10, 1979.)

*Ms. Leda C. Hartwell, Messrs. Harris & Hewitt* and *Mr. William B. Hewitt,* for appellants.

*Messrs. Thompson, Swope, Burns & Biswas* and *Mr. James C. Thompson,* for appellee Larry Moore.

*Mr. Ira Moore, pro se.*

MOYER, J. This case is before us for the second time, the first being upon an appeal of a judgment of the Franklin County Municipal Court dismissing defendant-appellee J. D. Car Corporation. This appeal is from a judgment of the Franklin County Municipal Court, sustaining motions to dismiss by the defendants at the end of plaintiffs' case.

On March 12, 1977, plaintiffs, husband and wife, sought to buy a used truck to move their family from Columbus, Ohio to Florida. Plaintiff Miriam Feliciano was born in Cuba and has been blind since the age of nine. Her husband, Francisco, was born in Puerto Rico and did not read or write English on March 12, 1977. Francisco worked as a machine operator and as a laborer in factories until he was disabled in 1975. Miriam supported the family since that time by working in a food-concession stand at the Ohio State Highway Patrol building.

On March 12, 1977, they went to one of J. D. Car Corporation's two locations, at Westerville Road in Columbus, and met defendant Larry Moore. Larry Moore was advised that plaintiffs were looking for a pickup truck to move their belongings to Florida and to be later used for their personal needs. Larry Moore took plaintiffs to Buckeye Lake to look at a truck. Plaintiffs said that they could not afford it but, after some discussion, they apparently agreed to purchase that truck for $1,000. When Miriam asked Larry Moore if he was sure that the truck would be in good shape to make the long trip, Larry said, "Oh, don't worry, everything was there is guaranteed."

On Monday, Larry Moore called Miriam and told her that the price would be $1,500, and she told him she could not afford to pay more than $1,000. On the following Wednesday, Larry Moore again called Miriam to indicate they had some "new" used trucks. Miriam told Larry Moore that her husband would come to look at the trucks and asked him to help Francisco because he did not read English. Larry Moore told her not to worry, that he "would take care of this. We are responsible, and this is our reputation. We take care."

Francisco drove to the Westerville lot and looked at a 1967 Chevrolet pickup truck which was parked on the premises. He testified he looked at the truck for three to four minutes but did not examine it, open the hood, sit in it, or test-drive it. However, defendant Ira Moore, the titled owner of the truck, testified that Francisco looked under the hood and was given a ride in the truck, at his request. Ira Moore further testified that during the test drive, Francisco told him he needed a truck to drive to Florida. Francisco agreed to purchase the truck for $850. Larry Moore told Francisco to go with his uncle, Ira Moore, to get the cash and transfer the certificate of title. After Francisco had obtained the cash, he gave it to Larry Moore, who gave Francisco a yellow certificate of title, telling him that his guarantee "was in the paper." Francisco testified that he bought the truck because Larry Moore told him the truck was guaranteed and that he believed the guarantee was on paper. He believed the guarantee was for 30 days. Miriam testified that she gave her husband the bankbook because she trusted Larry Moore.

When Francisco drove the truck from defendant J. C. Car

Corporation's lot, it travelled a distance of about seven blocks and stopped. Plaintiffs attempted to cause defendants to repair the truck, which they promised to do several times, but never did. Plaintiffs' money was not returned to them. Miriam testified that when she talked to Larry Moore after the truck broke down, he said to her that no one could help her because she was blind. The parties stipulated that there was no warranty or guarantee in writing.

A mechanic for the state of Ohio testified for plaintiffs, as an expert, that upon examination of the truck at plaintiffs' request after it broke down, he found that the engine was a car engine and that it was installed sideways and welded directly to the frame of the truck with no motor mounts. He also testified that neither the gas gauge nor the oil gauge was working; that there was bad rust under the hood; and that because the linkage was too short, the truck would run only in first gear. Other testimony indicates that Larry Moore welded motor mounts to the truck and that Ira Moore actually installed the motor.

James Dimitroff, the owner of J. D. Car Corporation, testified he operated two car lots—one at the Westerville Road site, and one on Cleveland Avenue. He further testified that most of the cars and trucks sold from the Westerville Road site were sold "as is," which meant they had no warranty. He also testified there was a book at the Westerville Road site stating which cars had warranties. There was further testimony that indicated that the manager of the Westerville Road lot was considered, for tax purposes, as an independent contractor, and for management purposes, as an employee of the J. D. Car Corporation. Larry Moore apparently was working for said manager, and Ira Moore, who owned the truck in question, was not employed by J. D. Car Corporation.

There is substantial testimony that indicates plaintiffs thought they were purchasing a truck from J. D. Car Corporation, and it was not until Miriam's contact with Larry Moore after the truck broke down that they realized neither he nor J. D. Car Corporation had owned the truck. In fact, at their first visit to the Westerville Road lot, Larry Moore referred to the premises as "my place." Miriam testified that they bought cars from dealers because there is a chance of "things working better."

Following the incident with the truck, plaintiffs did move to Florida. They offered evidence indicating they had spent several hundred dollars that they would not have spent if they had been able to use the Chevrolet truck to move.

The single assignment of error is as follows:

"The trial court erred in directing a verdict against the plaintiffs and in favor of all three defendants."

Civ. R. 50(A)(4) provides, as follows:

"(A) Motion for directed verdict.

"* * *

"(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In ruling on defendants' motions for a directed verdict (the trial court referred to them as motions to dismiss), the court applied the general rule that the right of a purchaser of personal property to rely upon material statements of the vendor carries with it a duty to investigate the property. While there is no Ohio case clearly dispositive of the issue before us, it is clear that the development of the law with respect to fraud and deceit has been a balancing of the following: preventing a perpetrator of fraud with benefiting from his acts, with encouraging the exercise of reasonable prudence in transactions involving the sale of personal property. Defendants' reliance upon *Traverse* v. *Long* (1956), 165 Ohio St. 249, in support of the trial court's judgment, is misplaced. *Traverse* involved the sale of real estate, and the doctrine of *caveat emptor* applies to real estate transactions (*Crabbe* v. *Freeman* [1959], 81 Ohio Law Abs. 65; *Manning* v. *Len Immke Buick* [1971], 28 Ohio App. 2d 203), but not generally, to the sale of used cars. 3 Ohio Jury Instructions 49, 49-50, Section 307.09(a), cited by defendants, is from a case (*Wilmot* v. *Lyon* [1892], 49 Ohio St. 296) involving a sale of personal property, and subsection (b) of the same instruction (3 O.J.I. 50, Section 307.09[b]) is from *Traverse, supra,* which arose from a transaction involving real property.

The law, with respect to fraud or deceit in the sale of personal property, has been restated many times. A concise, accurate statement appears in *Manning, supra,* at page 205, as follows:

" '1. A false representation; actual or implied, or the concealment of a matter of fact, material to the transaction; made falsely.

" '2. Knowledge of the falsity—or statements made with such utter disregard and recklessness that knowledge is inferred.

" '3. Intent to mislead another into relying on the representation.

" '4. Reliance—with a right to rely.

" '5. Injury as a consequence of that reliance. All of these elements must be present if actionable fraud is to be found. The absence of one element is fatal to recovery.' "

Construing the evidence of fraud on the part of Ira Moore and Larry Moore most strongly in favor of plaintiffs, we believe reasonable minds could come to more than one conclusion with respect to the evidence. A jury could find that Ira Moore and Larry Moore acted together to deceive plaintiffs into purchasing the Chevrolet truck. Although Larry Moore said he did not inspect the engine, he did purportedly state that the truck was guaranteed when he apparently had no intention of performing such a guarantee. The truck would not have been sold to plaintiffs without the active participation of both defendants, Larry Moore and Ira Moore. With respect to James Dimitroff, there were sufficient facts presented from which a jury could find an agency relationship, at least with respect to Larry Moore. That is a question of fact that should have been submitted to the jury.

However, we must also review plaintiffs' duty to investigate or examine the truck they purchased. It is this aspect of the facts that makes this case unique. One of the plaintiffs, Miriam, was blind and obviously could not have made an inspection of the truck or of the certificate of title. The other plaintiff, Francisco, could not read or write English and could understand only some English. It is clear from the testimony that they went to a "dealer" to purchase a used truck because they thought their chances of obtaining a dependable vehicle

were better. Clearly, they relied upon Larry Moore and Ira Moore to provide them with just that. They had no reason to believe, under their special circumstances, that they were not purchasing the truck from J. D. Car Corporation and that the truck was not guaranteed.

This is a case that begs for precedent, where we find none reported in Ohio. The early cases that hold that a person proceeds at his own peril when he has an opportunity of exercising his own judgment, do not apply to the facts in this case. See *Floyd* v. *Paul* (1883), 6 Dec. Rep. 1185; *Crist* v. *Dice* (1869), 18 Ohio St. 536. Furthermore, reasonable minds could conclude that Francisco could not have detected the defective linkage upon an inspection of the truck. With respect to the cases that state a duty to read documents before they are signed, it cannot be reasonably argued that either plaintiff had a duty to read the certificate of title to determine whether it contained a guarantee as allegedly promised by Larry Moore. There was believable evidence that defendants not only made untrue representations to plaintiffs, but, in fact, took advantage of their shortcomings in causing them to purchase the truck.

In the absence of precedent in our own jurisdiction, we look to the case law of other jurisdictions. We believe that the more persuasive view of the courts of other jurisdictions is well summarized in 37 American Jurisprudence 2d 330, 332, Fraud and Deceit, Section 248:

"A careful reading of the cases discloses that in determining whether reliance upon a representation in a particular case is justifiable or excusable, and in determining what constitutes reasonable prudence and diligence with respect to such reliance and what constitutes a reckless failure to exercise such prudence, the courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, the respective intelligence, experience, age, and mental and physical condition of the parties, and their respective knowledge and means of knowledge."

Stated another way, the view is that:

"***There would seem to be no doubt that while, in the ordinary business transactions of life, men are expected to ex-

ercise reasonable prudence, and not to rely upon others with whom they deal, to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practiced upon the simple-minded or unwary." 37 American Jurisprudence 2d 329, 330, Fraud and Deceit, Section 247.

Applying the rationale of those statements of law to the facts in this case, we believe that the jury should have been given the responsibility of determining whether plaintiffs had a right to rely upon the representations and actions of defendants Larry Moore and Ira Moore, and upon the implied representation on the part of defendant J. D. Car Corporation that the truck was sold by it since the truck was on its used car lot and by an apparent employee of said defendant; and further determine whether there was an intent to mislead the plaintiffs into relying upon the representations made, and whether there was subsequent damage to them. The questions of whether plaintiffs were unwary and whether their intelligence, physical condition and knowledge entitled them to damages are all questions that should be decided by a jury, rather than on a motion for a directed verdict. While we make no determination of those questions here, we do find that construing the evidence most strongly in favor of plaintiffs, reasonable minds could come to more than one conclusion upon at least one determinative issue, and the assignment of error is therefore sustained.

Wherefore, the judgment is reversed, and the cause is remanded for further proceedings, consistent with this decision and law.

*Judgment reversed and*
*cause remanded.*

STRAUSBAUGH, P. J., and REILLY, J., concur.