**RENNER, Appellant,**

v.

**DERIN ACQUISITION CORPORATION et al.;
Royal Chevrolet GEO et al., Appellees.**

[Cite as *Renner v. Derin Acquisition Corp.* (1996), 111 Ohio App.3d 326.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69181.

Decided May 13, 1996.

*Philip D. Althouse; Tate & Renner* and *Richard R. Renner,* for appellant.

*Joseph W. Diemert, Jr., & Associates Co., L.P.A.,* and *Laura J. Gentilcore,* for appellee Royal Chevrolet GEO.

Jᴀᴍᴇꜱ M. Pᴏʀᴛᴇʀ, Judge.

Plaintiff-appellant Carol B. Renner appeals from a judgment following a jury trial rendered against her for $737 plus interest in favor of defendant-appellee Derin Acquisition Corporation arising out of her purchase of a GEO Prizm automobile with a General Motors ("GM") employee discount purchase certificate. Plaintiff also appeals from a $6,000 award of attorney fees to defendant pursuant to R.C. 1345.09(F)(1) of the Consumers Sales Practices Act. Plaintiff contends that the trial court erred in denying her motion for summary judgment on her CSPA claims and granting summary judgment to defendants thereon, in failing to submit certain interrogatories to the jury, in failing to direct a verdict, grant j.n.o.v. or a new trial in plaintiff's favor on defendant's fraud counterclaim, and in awarding attorney fees to defendant without a hearing. We find merit to the appeal. For the reasons hereinafter stated, we affirm in part, reverse in part and remand the cause for further proceedings.

The events leading to this action began on October 9, 1993 when plaintiff went to Royal Chevrolet GEO in Aurora, Ohio to purchase a 1994 GEO Prizm automobile. Royal is the trade name of Derin Acquisition, which is a franchised dealer of Chevrolet Division of GM. Plaintiff had with her a GM employee discount certificate which she received from her son who was a former employee of GM.

GM provides employee discount certificates as a benefit to its employees. The certificate entitles the employee to a specified discount depending on the make of the car and a different discount percentage for various options. The employee

discount is extended to family members of the employee including parents. As part of its franchise agreement with its dealers, GM requires dealers to accept the employee discount certificate which are redeemed by GM for the amount of the discount when presented by the dealer.

The certificate issued to plaintiff's son did not contain any time limit for validity. It included an 800 number directed to the employee inviting any questions. Plaintiff believed the certificate was valid for one year from date of issuance, as her son told her this when he gave the certificate to her in February 1993. Her son resigned from GM in March 1993, six months before she presented the certificate.

On October 9, 1993, plaintiff took the discount certificate to Royal. Between twenty and thirty percent of Royal's sales involve GM employee discounts. Before plaintiff's transaction, Royal had never had a certificate rejected by GM as invalid. The employees at Royal assumed that eligibility is determined by GM before the certificate is issued. Royal had no practice of verifying the validity of the certificates before consummating the sale. Neither Royal nor plaintiff had a copy of GM's discount certificate policy, which indicated that ex-employees and their relatives were not eligible for the discount. Royal viewed employee discount certificates as an agreement between GM and the employee. Royal has no policy requiring its employees to integrate all terms of a vehicle purchase into the sales agreement.

When plaintiff entered Royal's showroom, she met a sales representative, Chris Nielsen. Plaintiff presented the employee discount certificate she received from her son. Nielsen made a copy of the certificate. Plaintiff had various questions about how Royal would handle the certificate and Nielsen answered those questions. She testified that she asked Royal employees if her certificate was still valid if her son had stopped working for GM. Although she testified that no one told her the certificate was valid, she stated that they "seemed" to think it was all right.

Nielsen also testified that he believed that the certificate was valid when plaintiff presented it. He stated that plaintiff told him that her son was a GM employee and that she was entitled to a GM discount. He testified that he did not recall plaintiff asking if the certificate was valid and that if she had asked, he would not have been able to give her an answer and would have directed her to someone who could.

Plaintiff placed an order with Royal that day for a GEO Prizm. The order price for the vehicle was $13,026. Charles Steward, the sales manager, testified that this amount was $737 less than Royal expected to receive for the vehicle since Royal anticipated that GM would honor the employee discount. Royal's GEO Order Worksheet, dated October 9, 1993, notified GM of plaintiff's employee

certificate number, 2316641. The invoice from GM to the dealer identified plaintiff as the GM employee who was purchasing the car and specified $737 as the discount. The discount was presented to plaintiff as thirteen percent of the base price, plus eighteen percent of the options. Plaintiff paid a deposit of $1,500 on the purchase with a credit card charge that was honored.

On December 10, 1993, plaintiff returned to Royal to pick up the car. On that date, she signed a contract for the purchase of the vehicle. At the time of signing the contract, no one at Royal told plaintiff about the requirements for the GM employee discount certificate program. Royal had taken no action to determine the validity of the certificate. Plaintiff at this time also signed a GM form acknowledging delivery of the car pursuant to the program. This same form had a place for the dealer to certify that "these Eligibility Rules applicable to a dealer have been complied with."

The December 10 purchase agreement contains no provision allowing Royal to increase the purchase price, nor did the agreement state that the price was contingent upon meeting the requirements of GM's employee discount policy. Plaintiff paid the balance due on the contract, partly in cash and partly by a credit card charge.

Only after plaintiff had driven away with the car did Royal learn that GM would not honor her certificate. Steward testified that after plaintiff had purchased the car, Royal then applied to GM to receive the payment of the discount. It was then that GM told Royal that the certificate was no longer valid and that GM would not reimburse Royal for the $737 discount.

On December 17, 1993, Nielsen telephoned plaintiff to inform her that GM would not honor the certificate and requested that she pay an additional $737. Plaintiff refused, but offered to return the car. Nielsen said he did not know if she should return the car.

In December 1993 or January 1994, a GM representative called plaintiff to tell her that the certificate was invalid and asked her to tell her son that the other three certificates issued to him were no longer valid.

On January 8, 1994, plaintiff called Royal to ask about her certificate of title. A Royal employee told her that the paper work for her title would be done soon and she could use her old license plates in the meantime. The Ohio Certificate of Title registered with the Clerk of Courts on January 11, 1994, but never delivered to plaintiff, listed a price of $13,121.85, which was identical with the total selling price listed on the December 10 agreement. However, Royal's owner, Steven Derin, decided not to deliver plaintiff's vehicle title to her because of her refusal to pay the additional $737.

On January 19, 1994, Royal's attorney, Laura Gentilcore, sent a certified letter to plaintiff demanding payment of the $737. It advised that unless payment was made within ten days, legal action would be taken against her. It also stated that plaintiff had misrepresented to Royal the validity of the discount certificate. The letter did not contain any notice to plaintiff that the letter was an attempt to collect a debt, nor did it inform her of her right to dispute the alleged debt.

After receiving the letter, plaintiff called Nielsen's supervisor, Charles Steward. Plaintiff said that she was very upset, and Steward agreed to check into the matter. Steward later called plaintiff and told her that it was out of his hands. He could not do anything for her. Plaintiff called Royal's title office and learned that the dealership was holding her title and would not deliver it to her. Plaintiff sought legal advice.

Plaintiff filed the instant action on March 23, 1994, seeking relief under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. 1692, and the Ohio Consumer Sales Practices Act ("CSPA"), R.C. Chapter 1345. She named as defendants Derin Acquisition Corporation ("Derin"), Chris Nielsen, and their attorney Laura Gentilcore.

On April 21, 1994, defendant Gentilcore served a motion to dismiss herself from the action under Civ.R. 12(B)(6). Plaintiff opposed the motion. On July 12, 1994, the trial court treated the motion as one for summary judgment and granted the dismissal. Plaintiff filed a motion to disqualify Gentilcore as counsel for Royal, which was denied.

Defendants Derin, Chris Nielsen and Laura Gentilcore filed answers and counterclaims. They claimed that plaintiff owed $737 for damages based on her fraud in tendering an invalid discount certificate and sought attorney fees for her filing of a groundless complaint in bad faith under R.C. 1345.09(F)(1) of the CSPA.

After discovery, the parties filed cross-motions for summary judgment, supported by affidavits and discovery materials. On April 7, 1995, the trial court overruled plaintiff's motion for summary judgment, but granted summary judgment to defendants, dismissing all of plaintiff's claims without explanation or opinion. The trial court set the matter for a jury trial on the common-law fraud counterclaims against plaintiff.

The jury trial began on April 12, 1995 before a visiting judge who informed the jury that the defendants' claim for attorney fees "is basically what this case is about." The defendants presented evidence of plaintiff's alleged fraud and their attorney fees over plaintiff's objection. At the close of the defendants' case, the defendants voluntarily dismissed the counterclaim of Chris Nielsen with preju-

dice.  The trial court rejected plaintiff's requested interrogatories to the jury bearing on her intent to defraud.

After defendants rested, the court announced that the attorney fees would be decided by the court after the jury's verdict was returned.  The trial court permitted defendants to question plaintiff repeatedly about the trial court's decision dismissing her original claims and her refusal to offer any money in settlement.  Plaintiff was not permitted to explain her positions, even though the defendants did not object.  The trial court denied plaintiff's motions for a directed verdict.  The jury found in favor of defendant Royal on the counterclaim and awarded damages of $737 on which judgment was entered.

On April 14, 1995, Renner filed a request for an oral hearing on the claim for attorney fees.  On April 24, 1995, the trial court entered judgment for $6,000 in attorney fees, without a hearing or opinion.  On May 31, 1995, the trial court denied plaintiff's motion for judgment notwithstanding the verdict and for a new trial.

A timely notice of appeal was filed herein.

We will address plaintiff's assignments of error in the order asserted and together where it is appropriate for discussion.

"I.  The trial court erred in granting summary judgment to defendants and in failing to grant summary judgment to Renner."

Under Civ.R. 56, summary judgment is proper when:

"(1) [N]o genuine issue as to any material fact remains to be litigated;  (2) the moving party is entitled to judgment as a matter of law;  and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made."  *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379;  *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial.  *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278;  *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802.  Doubts must be resolved in favor of the nonmoving party.  *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial.  *Wing v. Anchor Media, Ltd.*

(1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest upon the mere allegations or denials of his pleadings, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

■ This court reviews the lower court's granting of summary judgment *de novo. Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

■ Plaintiff contends that the trial court erred in granting summary judgment for defendants on plaintiff's CSPA claims and in denying plaintiff's motion for summary judgment against the defendants. Plaintiff argues that she paid in full the contract price for the vehicle, the defendant was not entitled to withhold the certificate of title, and defendant could not change the terms of the written purchase agreement by imposing additional charges after the sale when they were not integrated into the final written agreement. We agree with plaintiff for the reasons hereinafter set forth.

Stripped of all extraneous issues, the ultimate issue is who should bear the loss of the "invalid" GM discount of $737—the franchised GM dealer or the purchaser in this transaction. We look to the written contract between the parties and the Ohio statutes to determine where the obligation rests.

Defendant Royal argues that "the validity of the certificate was a condition precedent to [plaintiff] obtaining the discounted price on the vehicle." However, there is nothing contained in the December 10 purchase agreement to support this contention. The purchase agreement, otherwise detailed in all respects, makes no reference to the GM employee discount, much less making its redemption by GM a condition precedent to the purchase price. Indeed, Royal's own contract form specifies that "[t]he front and back of this Order comprises the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into, or will be recognized."

Royal never delivered to plaintiff the certificate of title and registration for the automobile she purchased from Royal, although she had requested it through counsel, and had filed a complaint with the Ohio Department of Motor Vehicles. The statutes of Ohio establish that Royal was obliged to deliver a certificate of title for the vehicle for which plaintiff had paid the contract price. R.C. 4505.03 specifically states:

"No person, except as provided in section 4505.05 of the Revised Code, shall sell or otherwise dispose of a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title with such assignment thereon as is necessary to show title in the purchaser; nor shall any person, except as provided in section 4505.11 of the Revised Code, purchase or otherwise acquire a motor vehicle without obtaining a certificate of title for it in his name in accordance with sections 4505.01 to 4505.19, inclusive, of the Revised Code.".

Similarly, R.C. 4505.19 states:

"No person shall:

" * * *

"(B) Purport to sell or transfer a motor vehicle without delivering to the purchaser or transferee thereof a certificate of title, a salvage certificate of title, or a manufacturer's or importer's certificate thereto, assigned to such purchaser as provided for in sections 4505.01 to 4505.19 of the Revised Code * * *."

The violation of these statutes is a criminal offense punishable by a fine of "not more than two hundred dollars or imprisoned not more than ninety days or both." R.C. 4505.99(C). Defendant Royal's conduct also implicates violations of the CSPA discussed below.

The Supreme Court has endorsed a broad and liberal construction of the CSPA. In *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933, the court stated:

"The Consumer Sales Practices Act prohibits unfair or deceptive acts and unconscionable acts and practices by suppliers in consumer transactions * * * [it] is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." *Id.* at 29, 548 N.E.2d at 935.

Consistent with this liberal construction, "intent or knowledge is not an element of a Consumer Sales Practices Act ('CSPA') laundry list claim unless the Act itself requires intent." *Fletcher v. Don Foss of Cleveland, Inc.* (1993), 90 Ohio App.3d 82, 86, 628 N.E.2d 60, 62. In other words, the CSPA "does not require either intent or knowledge of the alleged perpetrator; rather it is sufficient that the conduct complained of 'has the likelihood of inducing in the

mind of the consumer a belief which is not in accord with the facts.' " *Funk v. Montgomery AMC/Jeep/Renault* (1990), 66 Ohio App.3d 815, 823, 586 N.E.2d 1113, 1119; *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1, 6, 608 N.E.2d 796, 800.

See, also, *Motzer Jeep Eagle, Inc. v. Ohio Atty. Gen.* (1994), 95 Ohio App.3d 183, 642 N.E.2d 20, where violation of administrative regulations under the CSPA were found *per se* unlawful although consumers were not factually misled:

"The language of Ohio Adm.Code 109:4–3–08(D) requires no construction. It clearly requires a motor vehicle supplier to provide customers with a disclosure in writing of a vehicle's use as a demonstrator. In the case at bar, although each of the five customers was orally informed, they were never provided with the required disclosure. The trial court therefore properly granted appellee partial summary judgment and appellant's first assignment of error is overruled.

" * * *

"The language of Ohio Adm.Code 109:4–3–16(B)(5) is clear, unambiguous and requires no interpretation. It clearly requires a dealer to show and make available for sale its vehicles as advertised, regardless of whether the customers saw, knew about or relied upon the advertisements." *Id.* at 186–187, 642 N.E.2d at 23.

The courts have found that failure to deliver a certificate of title for a motor vehicle is an unfair and deceptive practice in violation of R.C. 1345.02(A). *Cardwell v. Tom Harrigan Oldsmobile, Inc.* (June 27, 1984), Montgomery App. No. CA 8119, unreported, 1984 WL 5351; *Preston v. Tom Kelsey* (May 9, 1986), Lucas App. No. C.A. L–85–352, unreported, 1986 WL 5376; *Toler v. Sullivan Buggy's Unlimited* (Sept. 21, 1987), Cleveland M.C. No. 86–CVE 32890, unreported. CSPA's injunctive power is available to require a car dealer to deliver the title to a purchaser who has paid the contract price for a car. *Cardwell, supra,* at 2.

The Attorney General of Ohio has enacted and promulgated rules to implement and define various deceptive acts and trade practices pursuant to delegated authority contained in R.C. 1345.05(B) and Chapter 119. These are set forth in the Ohio Administrative Code. Ohio Adm.Code 109:4–3–16(B)(17) states that "it shall be a deceptive and unfair act or practice for a dealer * * * in connection with the advertisement or sale of a motor vehicle * * * to raise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer * * *." "Purchase price" is defined as "the total amount the consumer is required to pay the dealer pursuant to the contract * * *." Ohio Adm.Code 109:4–3–16(A)(5); see, also, *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1, 608 N.E.2d 796, (dealership's demand that consumer pay difference between incor-

rectly calculated lease balance and correct balance violated Ohio Adm.Code 109:4–3–16[B][17] ).

Ohio Adm.Code 109:4–3–16(B)(22) also requires the dealer to integrate all representations or promises in an integrated contract:

"(B) It shall be a deceptive and unfair act or practice for a dealer, * * * in connection with the advertisement or sale of a motor vehicle, to:

" * * *

"(22) Fail to integrate into any written sales contract, all material statements, representations or promises, oral or written, made prior to obtaining the consumer's signature on the written contract with the dealer * * *."

The burden is placed on the supplier, an automobile dealer in this case, to integrate in the final contract " 'all material statements, representations or promises, oral or written.' " *Gaylan v. Dave Towell Cadillac* (1984), 15 Ohio Misc.2d 1, 2, 15 OBR 243, 245, 473 N.E.2d 64, 66 (dealer violated CSPA by failing to integrate all material statements, representations and promises made prior to the sales agreement). Having failed to incorporate or refer to the redemption of the employee discount by GM in the written sales contract, the dealer Royal is estopped to assert an oral condition precedent as an excuse for withholding a certificate of title it was otherwise bound to deliver under the applicable statutes and regulations.

Based on the foregoing, we hold that the trial court erred in granting summary judgment in Royal's favor. We reverse and vacate summary judgment for defendant and enter summary judgment for the plaintiff requiring Royal to deliver the certificate of title and registration to plaintiff.

We remand the cause to the trial court for determination of statutory damages and an award of reasonable attorney fees to plaintiff pursuant to R.C. 1345.09(F)(2), consistent with this opinion and the principles contained in *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933, and *Fletcher v. Don Foss of Cleveland, supra,* 90 Ohio App.3d 82, 628 N.E.2d 60.

Assignment of Error I is sustained.

"II. The trial court erred in dismissing plaintiff's claims against Laura Gentilcore and in giving notice of conversion of defendant's motion to dismiss to a motion for summary judgment after granting such motion."

Plaintiff claims that she was given no opportunity to present countervailing evidence on Gentilcore's motion to dismiss, which was converted to a motion for summary judgment by the trial court, and granted. Gentilcore contends that the claim against her was defective on its face and that the court should have granted her motion to dismiss without converting it to summary judgment.

Therefore, Gentilcore argues that the failure to allow additional discovery was harmless given that the motion to dismiss should have been granted. We agree.

We find the trial court's failure to give notice of converting defendant's motion to dismiss into a motion for summary judgment to be harmless error, as the failure to provide notice is not prejudicial where the motion to dismiss would have been granted. *Guthrie v. Liquor Control Comm.* (1988), 43 Ohio App.3d 101, 102–103, 539 N.E.2d 697, 698–699; *Arnold v. Cleveland* (Oct. 31, 1991), Cuyahoga App. No. 59260, unreported, at 7, 1991 WL 228628; *Loiseau v. BP America, Inc.* (July 18, 1991), Cuyahoga App. No. 61135, unreported, at 2, 1991 WL 144405.

The standard of review for a dismissal pursuant to Civ.R. 12(B)(6) was recently stated by this court in *Thompson v. Cent. Ohio Cellular, Inc.* (1994), 93 Ohio App.3d 530, 538, 639 N.E.2d 462, 467:

"A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.* (1992), 65 Ohio St.3d 545, 605 N.E.2d 378. It is well settled that 'when a party files a motion to dismiss for failure to state a claim, all the factual allegations of the complaint must be taken as true and all reasonable inferences must be drawn in favor of the non-moving party.' *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 60, 565 N.E.2d 584, 589, citing *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. However, while the factual allegations of the complaint are taken as true, the same cannot be said about unsupported conclusions. 'Unsupported conclusions of a complaint are not considered admitted, * * * and are not sufficient to withstand a motion to dismiss. * * * ' (Citations omitted.) *State ex rel. Hickman v. Capots* (1989), 45 Ohio St.3d 324, 544 N.E.2d 639.

"In resolving a Civ.R. 12(B)(6) motion, courts are confined to the averments set forth in the complaint and cannot consider outside evidentiary materials unless the motion is converted, with appropriate notice, into one for summary judgment under Civ.R. 56. *State ex rel. Baran v. Fuerst* (1990), 55 Ohio St.3d 94, 563 N.E.2d 713. In order for a court to grant a motion to dismiss for failure to state a claim, it must appear 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224, 327 N.E.2d 753, 755."

Plaintiff's complaint against Gentilcore stated that, based on a single demand letter, she is a "supplier" as defined in R.C. 1345.01(C) and "debt collector" as defined in Section 1692a(6), Title 15, U.S.Code. While plaintiff argues that these are factual statements, an examination of the allegations shows that they are unsupported conclusions.

In *Moore v. Florida Bank of Commerce* (S.D.Ohio 1986), 654 F.Supp. 38, affirmed (C.A.6, 1987), 833 F.2d 1013, the court held that while no Ohio court has defined the level of business activity required for finding that one is "engaged in the business of effecting or soliciting consumer transactions," under R.C. 1345.01(C), that phrase implies more than one isolated occurrence, especially when the occurrence is not within the usual course of business. The phrase has generally been held to mean continuous or regular activity, not a single isolated occurrence. See *United States v. Tarr* (C.A.1, 1978), 589 F.2d 55, 59; *Fillippo v. S. Bonaccurso & Sons, Inc.* (E.D.Pa.1978), 466 F.Supp. 1008, 1017. The *Moore* holding was followed in *LaVeck v. Al's Mustang Stable* (1991), 73 Ohio App.3d 700, 598 N.E.2d 154, where it was held that a repair shop owner, whose sales did not exceed three vehicles in any one year, was not engaged in the business of effecting or soliciting consumer transactions and was not a supplier for the purposes of the CSPA.

Therefore, the isolated act by Gentilcore herein did not make her a "supplier" engaged in the business of effecting or soliciting "consumer transactions."

■ Nor do we find sufficient allegations in plaintiff's complaint to support her claim that Gentilcore violated the federal Fair Debt Collection Practices Act, Section 1692, Title 15, U.S.Code ("FDCPA"). Gentilcore's letter was not a debt collection letter, as it did not seek to obtain payment of a "debt" within the meaning of the Act. Pursuant to Section 1692a(5):

"The term 'debt' means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment."

The Act does not define what "money arising out of a transaction" means. However, it has been interpreted to mean transactions in which the consumer is extended credit to purchase the "money, property, insurance or services." The court in *Zimmerman v. HBO Affiliate Group* (C.A.3, 1987), 834 F.2d 1163, 1168, in seeking to define what "money arising out of a transaction" means, held:

"We find that the type of transaction which may give rise to a 'debt' as defined in the FDCPA, is the same type of transaction as is dealt with in all other subchapters of the Consumer Credit Protection Act [the FDCPA was enacted as an amendment to the Consumer Credit Protection Act] *i.e.,* one involving the offer or extension of credit to a consumer. Specifically it is a transaction in which a consumer is offered or extended the right to acquire 'money, property, insurance or services' which are 'primarily for household purposes' and to defer payment."

In the case herein, the complaint does not assert that this is a case in which credit was extended and payment deferred and therefore does not fall within the provisions of the FDCPA.

This case is analogous to *Arnold v. Truemper* (N.D.Ill.1993), 833 F.Supp. 678, in which consumers were requested by a bank to pay back $18,000 mistakenly credited to their account. The court in that case held that the plaintiffs' claim did not fall under the provisions of the FDCPA, as the bank did not extend any "credit" to the plaintiffs and because the "debt" arose out of a mistake by the bank in overcrediting the account and therefore did not occur out of an "obligation of a consumer to pay money arising out of a transaction." Similarly, in the case herein, Royal did not extend credit to plaintiff. Plaintiff paid cash with a check and credit cards. Royal's assertion that plaintiff owed the $737 was based on its error in accepting the certificate without determining its validity. Since the amount that Royal contends the plaintiff owed was by virtue of its own error, the amount is not a "debt" within the meaning of the FDCPA.

These interpretations of debt "arising out of a money transaction" are not inconsistent with the United States Supreme Court's recent case of *Heintz v. Jenkins* (1995), 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395, and subsequent cases: *Wadlington v. Credit Accept. Corp.* (C.A.6, 1996), 76 F.3d 103, 106; *Blakemore v. Pekay* (N.D.Ill.1995), 895 F.Supp. 972, which hold that the FDCPA applies to attorneys who "regularly" engage in consumer debt collection activity. In those cases, the attorneys were acting as debt collectors in seeking to recover on defaulted loan payments in installment credit transactions not at issue here.

The federal Act was not intended to reach the case we have before us. It would be a dangerous precedent to hold that a single letter, such as was written here, subjects attorneys to being named defendants in the very case in which they been retained to defend their client. The collateral effect of allowing such a claim would be the disqualification of counsel, a questionable strategic device (attempted here), which we do not wish to encourage. The federal Act was never intended to serve such a purpose and we reject its application here.

Assignment of Error II is overruled.

"III. The trial court erred in failing to direct a verdict in favor of the plaintiff on the defendant's counterclaim for fraud."

This assignment of error goes to the issue of whether the trial court erred in submitting to the jury the question of whether common-law fraud was committed by plaintiff upon presentation of the GM employee discount certificate to Royal. For the reasons hereinafter stated, we find that the trial court erred in not directing a verdict for plaintiff on Royal's counterclaim.

We find, based on the circumstances before us, that allowing Royal to raise a claim of common-law fraud against plaintiff undercuts and frustrates the salutary purposes intended by the General Assembly in enacting the CSPA. The Act was passed as a matter of public policy to protect consumers like plaintiff from unfair and deceptive practices of suppliers, not to protect suppliers, *e.g.*, car dealers, from deceptive acts of consumers.

Consistent with the spirit of the CSPA and the administrative rules promulgated thereunder, the burden of determining the validity of a discount coupon or certificate should rest with the supplier because it alone determines what price it will accept for the goods in question and what discounts it will allow. As previously discussed, the burden is by law placed on the supplier to assure that all the material terms of the transaction are incorporated in the sales agreement. It is an unfair and deceptive practice, as a matter of law, for a supplier not to include all the material terms in the contract or to charge more than the contract specifies. Ohio Adm.Code 109:4–3–16(B)(17) and (22). Certainly, the validity of the discount certificate was one of the material terms that the dealer did *not* incorporate in the sales agreement as required by law. Had Royal complied with its obligation, this unfortunate litigation would never have arisen. Under the unique circumstances of this case, it is estopped to argue that it was through the consumer's common-law fraud that it was excused from complying with the law.

Further, in order to present a valid claim for fraud, the claimant must prove the following elements:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into justifiable relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712.

This court has held that in determining whether reliance is justifiable "courts consider the various circumstances involved, such as the nature of the transaction, the form and materiality of the representation, the relationship of the parties, and their respective knowledge and means of knowledge." *Finomore v. Epstein* (1984), 18 Ohio App.3d 88, 90, 18 OBR 403, 405–406, 481 N.E.2d 1193, 1196, citing *Feliciano v. Moore* (1979), 64 Ohio App.2d 236, 241, 18 O.O.3d 176, 179–180, 412 N.E.2d 427, 430. We find no justifiable reliance by Royal on any alleged representations made by the plaintiff.

The evidence disclosed that the plaintiff presented the discount certificate on October 9. The dealer made a copy of the certificate when it took the plaintiff's

order on that date. It transmitted Renner's certificate No. 2316641 to GM on its GEO Order Worksheet. GM's invoice indicated plaintiff was entitled to a $737 employee discount. Royal, a franchised GM dealer, had a two-month period, until December 10, 1994, to further verify the validity of the certificate with GM before executing the purchase contract with the consumer and delivering the car. It did not do so.

Determination of the certificate's validity was as accessible to Royal as it was to plaintiff. "In property transactions, there is no right to rely on oral representations regarding the property transferred where the true facts are equally open to both parties." *Finomore,* 18 Ohio App.3d at 90, 18 OBR at 406, 481 N.E.2d at 1196. We believe this principle also applies to personal property. See *LaVeck v. Al's Mustang Stable* (1991), 73 Ohio App.3d 700, 704, 598 N.E.2d 154, 156–157, where the court found that the alleged fraud was not actionable where the complaining party had the opportunity to verify the claims regarding the sale of a car and failed to do so, thereby failing to establish justifiable reliance. See, also, *Feliciano v. Moore,* 64 Ohio App.2d at 241–242, 18 O.O.3d at 179–180, 412 N.E.2d at 430–431; *Noth v. Wynn* (1988), 59 Ohio App.3d 65, 67, 571 N.E.2d 446, 448–449; *Higginbottom v. Manhattan Life Ins.* (Feb. 3, 1994), Cuyahoga App. No. 64633, unreported, 1994 WL 30428. Here, Royal had the opportunity to validate the certificate with GM before the sale, but waited instead until after the sale and delivery of the car.

The record does not support Royal's claim that it "had a right to rely on the fact that the presenter had determined her eligibility." Without any specific representation by plaintiff that she had checked with GM to determine the certificate's current validity, or that she was otherwise familiar with GM's policies, the dealer should not have made any assumption about GM's willingness to redeem the certificate. There is no evidence that plaintiff prevented the franchised GM dealer from communicating directly with GM about the certificate which it had copied at the time of the order. Indeed, GM's invoice specifying the $737 discount as applied to its employee plaintiff may have assured Royal that the certificate would be redeemed, but that was not plaintiff's doing.

Finally, defendant Royal has used the common-law doctrine of fraud to alter its statutory responsibilities under the CSPA. While CSPA requires a dealer to put all the terms of an automobile sale in writing and to refrain from charging anything more than the price specified in the written contract, the dealer here has used a claim for fraud to obtain a judgment for money claimed ($737) above the contract price by invoking an oral condition which it failed to include in the written agreement. The award of $737 in damages to defendant is squarely barred by the deceptive and unfair act "to raise or attempt to raise the actual

purchase price of any motor vehicle to a specific consumer." Ohio Adm.Code 109:4–3–16(B)(17).

For the foregoing reasons, we sustain Assignment of Error III. Assignments of Error IV, V and VI are rendered moot by our previous rulings and need not be addressed. App.R. 12(A)(1)(c).

We vacate the judgments in favor of Royal for $737 and $6,000 in attorney fees, hereby order the delivery of the certificate of title and registration to plaintiff and remand the cause to the trial court for plaintiff to apply for statutory damages and reasonable attorney fees consistent with R.C. 1345.09(F)(2), including those incurred on this appeal.

*Judgment reversed in part,
affirmed in part
and remanded.*

HARPER, P.J., and MATIA, J., concur.