JOURNAL ENTRY AND OPINION
Plaintiff-appellant Cornerstone Fabricating Construction, Inc. (hereafter "Cornerstone") contests the award of summary judgment rendered in favor of defendant-appellee Rio Algom, Inc. (hereafter "Rio Algom") in this action for breach of contract. Cornerstone maintains that there are disputed issues of fact as to whether or not these parties previously reached a settlement: Rio Algom says they did, but Cornerstone says they did not. We conclude that summary judgment was not in order in this case, so we reverse the judgment.
Our understanding of this dispute is that Cornerstone, a Michigan corporation engaged in the business of manufacturing large metal structures, was a subcontractor to general contractor Clayco Accurate Construction Co. (hereafter "Clayco") on a project referred to as the Union Electric Portage des Sioux power plant in St. Louis, Missouri. Under that subcontract, Cornerstone was required to fabricate welded stainless steel structures for the ongoing repair and/or construction of a coal-fired electric utility plant. Cornerstone in turn contracted with Rio Algom, a Delaware corporation operating by a division known as Vincent Metal Goods, to furnish stainless steel shapes.[1]
Because Cornerstone had reportedly been a credit problem for Rio Algom in the past, Rio Algom insisted as a condition to its agreement with Cornerstone that Cornerstone's general contractor, Clayco, sign a joint check agreement. Under that agreement, Clayco would make its checks payable to Cornerstone and Vincent Metal Goods. Upon receipt of any payments, Vincent Metal Goods would execute and deliver waivers or releases of liens as Clayco might reasonably require.
Starting on January 24, 1996, Cornerstone placed four separate orders to Rio Algom for materials that totaled in excess of $150,000. Cornerstone alleged that Rio Algom agreed to deliver stainless steel shapes at a price of $1.55 per pound within seven to ten days after receiving Cornerstone's order, but Rio Algom denied this. Cornerstone further alleged that Rio Algom delayed its deliveries and charged Cornerstone in excess of $1.55 per pound, but Rio Algom denied these allegations.
On July 3, 1996, Rio Algom, identified by its operating division Vincent Metal Goods, filed a breach of contract complaint in the Cuyahoga County Common Pleas Court against Clayco, Cornerstone, and Cornerstone's president Robert C. Bishop. In that case, styled Vincent Metal Goods, Division of RioAlgom, Inc., etc. vs. Cornerstone Fabrication Construction,Inc., et al., Case No. 311346, Rio Algom sought to recover the $156,910.27 balance it claimed was due Rio Algom for the sheet metal it delivered to Cornerstone. It appears that separate settlement negotiations occurred during the course of that litigation. We are told that Clayco paid Rio Algom $156,910.27 and that Cornerstone, through its president Robert Bishop, agreed that Clayco's check would not include Cornerstone as a co-payee, notwithstanding the joint check agreement among Clayco, Cornerstone and Rio Algom. Rio Algom in turn agreed to execute a final waiver of liens.
The precise scope of any settlement of that litigation is an open question. Rio Algom insists that all parties agreed to a final and conclusive settlement of all outstanding claims. Cornerstone maintains that although settlement discussions occurred, no final settlement was attained. We have not been furnished with a settlement agreement or release of claims executed by the parties to that litigation, so we assume that there is none.
We do know from the record of Case No. 311346 that Rio Algom filed a notice that dismissed its complaint with prejudice against only Clayco on September 5, 1996. On September 17, 1996, Rio Algom filed a motion for default judgment against remaining defendants Cornerstone and Bishop. It then appears that Rio Algom stipulated to grant those defendants leave to respond by October 17, 1996. At 3:11 p.m. on October 18, 1996, Rio Algom filed a notice of voluntary dismissal of its complaint, without prejudice. Defendants Cornerstone and Bishop filed an answer and counterclaim that same day, and we assume that pleading was filed after Rio Algom's notice based on subsequent housekeeping journal entries.
It is clear, however, that the matter was not yet put to rest. On March 10, 1997, Cornerstone filed the instant breach of contract action against Rio Algom. Assigned to the same trial judge who presided over Case No. 311346, Cornerstone alleged Rio Algom's delayed deliveries at an inflated price caused Cornerstone to incur additional costs in excess of $60,000. On April 28, 1997, Rio Algom answered Cornerstone's complaint and asserted a counterclaim against Cornerstone that apparently seeks to recover interest and collection expenses only if Cornerstone's claim is found valid and is not dismissed as a matter of law.
On April 13, 1998, Cornerstone moved for partial summary judgment to defeat three of the affirmative defenses asserted in Rio Algom's answer: accord and satisfaction; settlement; and acceptance of goods pursuant to Uniform Commercial Code 2-607 (R.C. 1302.65). Rio Algom opposed that motion and later filed its own motion for summary judgment on May 26, 1998, requesting judgment in its favor on these grounds: estoppel; acceptance of goods pursuant to Uniform Commercial Code 2-607 (R.C. 1302.65); and/or res judicata, based on the supposed dismissal of Cornerstone's counterclaim in Case No. 311346. Cornerstone subsequently opposed Rio Algom's motion.
On August 3, 1998, the court denied Rio Algom's motion in an order which reads:
 [Rio Algom's] Motion for Summary Judgment (filed 5-26-98) is denied. Questions of fact exist regarding whether * * * Rio Algom reached a settlement with * * * Cornerstone Fabricating in Case No. 311346 that would preclude this lawsuit.
In a separate order entered the same day, the court ruled:
 [Cornerstone's] Motion for Partial Summary Judgment (filed 4-20-98) [sic] is granted regarding [Rio Algom's settlement affirmative defense]. In Case No. 311346, Rio Algom dismissed its Complaint before Cornerstone was required to file its Answer and Counterclaim. The remainder of [Cornerstone's] motion for partial summary judgment is denied.
This case would then take one more twist. On August 25, 1998, the court entered the following order which we quote in full:
 After in-chambers conference with counsel for both parties, the Court sua sponte reverses its decision denying [Rio Algom's motion for summary judgment. Rio Algom's motion for summary judgment] is granted. It is apparent that the intent of all parties to Case No. 311346 was to settle all claims arising out of the facts giving rise to that lawsuit. Accordingly, [plaintiff] Cornerstone is estopped from denying its settlement with [defendant] Rio Algom and this case is barred by the settlement reached in Case No. 311346.[2]
Cornerstone appealed the court's August 25, 1998 ruling on September 24, 1998.[3]
Cornerstone's first assignment of error states:
 I. THE COURT BELOW ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT ON THE GROUNDS OF A SETTLEMENT OF A PRIOR CASE WHEN THE EVIDENCE PROVIDED SHOWED (1) THAT COUNSEL FOR APPELLEE DENIED, IN WRITING, SUCH SETTLEMENT EXISTED (2) THAT THERE EXISTED NO CONSIDERATION FOR APPELLANT'S PURPORTED SETTLEMENT PROMISE AND (3) THAT THE ACTIONS OF THE APPELLEE WERE IN VIOLATION OF THE ALLEGED SETTLEMENT AGREEMENT.
Cornerstone contends the trial court erred by concluding as a matter of law that Cornerstone settled its dispute with Rio Algom in Case No. 311346 and that the settlement barred Cornerstone's claim in this case. Cornerstone disputes that it reached a settlement with Rio Algom either in that litigation or at any other time. We agree that factual questions precluding summary judgment exist in this case. Accordingly, we sustain Cornerstone's assignment of error.
Summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Zivich v. Mentor Soccer Club,Inc. (1998), 82 Ohio St.3d 367, 369-370; Temple v. Wean United,Inc. (1977), 50 Ohio St.2d 317, 327. To obtain a summary judgment under Civ.R. 56 (C), the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. Vahila v. Hall (1997), 77 Ohio St.3d 421,430. If the moving party discharges this initial burden, the party against whom the motion is made then bears a reciprocal burden of specificity to oppose the motion. Id. See, also,Mitseff v. Wheeler (1988), 38 Ohio St.3d 112. We review the trial court's judgment de novo and use the same standard that the trial court applies under Civ.R. 56 (C). See Renner v. DerinAcquisition Corp. (1996), 111 Ohio App.3d 326, 333; N. CoastCable L.P. v. Hanneman (1994), 98 Ohio App.3d 434, 440.
In reviewing the record before us, we have serious doubts as to whether Rio Algom carried its initial burden of informing the court of the basis for the motion and identifying those portions of the record which support the requested judgment. "Under Civ.R. 56 (C), only" depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact' are permitted to support a motion for summary judgment." State ex rel. Boggs v.Springfield Local School Dist. Bd. of Edn. (1995), 72 Ohio St.3d 94,97[4] Rio Algom's motion for summary judgment, on the other hand, relied primarily on numerous unauthenticated exhibits attached to the motion, none of which comported with the evidence allowed by Civ.R. 56 (C). The only evidence that did comport with the rule consisted of three excerpted pages from the deposition of Robert Bishop, which yielded little or no substantive information to support Rio Algom's motion. Cornerstone's brief in opposition to Rio Algom's motion at least included an affidavit from Cornerstone's president, Robert C. Bishop, in which he denied that Cornerstone's dispute with Rio Algom was settled or that Cornerstone failed to notify Rio Algom of non-acceptance.
Whether or not these parties settled their dispute is an all too-obvious question in this case, and courts must be cautious before declaring that a dispute has been settled. In Rulli v. FanCo. (1997), 79 Ohio St.3d 374, the court's syllabus states: "Where the meaning of terms of a settlement agreement is disputed, or where there is a dispute that contests the existence of a settlement agreement, a trial court must conduct an evidentiary hearing prior to entering judgment." The court's opinion notes:
 We observe that courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants. Though we encourage the resolution of disputes through means other than litigation, parties are bound when a settlement is reduced to final judgment. Since a settlement upon which final judgment has been entered eliminates the right to adjudication by trial, judges should make certain the terms of the agreement are clear, and that the parties agree on the meaning of those terms.
* * *
 Where parties dispute the meaning or existence of a settlement agreement, a court may not force an agreement upon the parties. To do so would be to deny the parties' right to control the litigation, and to implicitly adopt (or explicitly, as the trial court did here) the interpretation of one party, rather than enter judgment based upon a mutual agreement.
Rulli, 79 Ohio St.3d at 376, 377.
Construed most favorably to Cornerstone, the evidence convinces us that genuine issues of material fact exist that preclude an award of summary judgment here. Cornerstone's evidence disputes any such settlement. Moreover, Rio Algom's disposition of Case No. 311346 itself presents factual questions which undermine a supposed settlement. Although Rio Algom plainly dismissed its complaint against Clayco with prejudice, it maintained its action against Cornerstone and Bishop. Moving first for a default judgment, Rio Algom ultimately dismissed the action without prejudice. Rio Algom has not demonstrated either that it suffered a detriment or that Cornerstone experienced a benefit such that Cornerstone should be estopped from pursuing its claim here.
The alternative grounds Rio Algom advanced to obtain summary judgment are likewise unpersuasive. In awarding summary judgment to Rio Algom solely on the basis of a supposed settlement, the trial, court implicitly declined to award summary judgment to Rio Algom on grounds of Cornerstone's alleged acceptance of goods, under Uniform Commercial Code 2-607 (R.C. 1302.65). We agree that Cornerstone's evidence sufficiently raised triable issues of fact to defeat summary judgment on that ground.[5] And while Rio Algom's motion for summary judgment contended that a housekeeping journal entry in Case No. 311346 dismissing Cornerstone's answer and counterclaim was res judicata in this case, Rio Algom has apparently abandoned that argument here. For it now concedes that Cornerstone's answer and counterclaim were moot because Rio Algom had already dismissed Case No. 311346 so that no case was pending when Cornerstone's pleading was filed. (See Rio Algom's Brief at 2.)
Because factual questions remain to be resolved in this case, we conclude that it was error for the trial court to grant Rio Algom's motion for summary judgment. We therefore sustain Cornerstone's first assignment of error. Cornerstone's second assignment of error states:
 II. THE COURT BELOW ERRED IN NOT GRANTING APPELLANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DISMISSING APPELLEE'S AFFIRMATIVE DEFENSE OF ACCORD AND SATISFACTION AS THERE WERE NO FACTS WHICH WOULD SHOW THAT AN ACCORD AND SATISFACTION OCCURRED.
Because there are issues of fact as to whether these parties reached a settlement, it follows that Cornerstone was not entitled to a summary judgment declaring there was no settlement. Consequently, we overrule Cornerstone's second assignment of error.
The judgment is reversed and the matter is remanded for further proceedings.
This cause is reversed and remanded.
It is, therefore, ordered that appellant recover of appellee its costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. COPRIGAN, J., CONCURS
 ANN DYKE, P.J., CONCURS IN JUDGMENT ONLY.
 ______________________________ DIANE KARPINSKI JUDGE
[1] Rio Algom maintained that its agreement was with "Cornerstone Fabrication Construction, Inc." and not with "Cornerstone Fabricating and Construction, Inc." Because we have not been told otherwise, we assume that these entities are one and the same.
[2] While the court's August 25, 1998 order expressly reversed the court's August 3, 1998 ruling that denied Rio's Algom's motion but did not expressly address the court's separate August 3, 1998 order which granted Cornerstone's summary judgment motion in part, we infer that the August 25, 1998 ruling implicitly reversed that ruling as well.
[3] We note the court's order did not expressly dispose of Rio Algom's counterclaim. But because that counterclaim for interest and collection expenses was pleaded so as to be operative only if Cornerstone's claim were valid and not otherwise dismissed as a matter of law, we assume the trial court's order dismissing Cornerstone's claim as a matter of law rendered Rio Algom' s contingent counterclaim moot.
[4] A 1999 amendment to Civ.R. 56 (C) no longer restricts transcripts of evidence to those "in the pending case," but the motion practice in this case pre-dated that amendment.
[5] Architectural Products Sales Co. v. Scaravelli (Aug. 3, 1995), Cuyahoga App. No. 68191, unreported, which Rio Algom first cited during oral argument, confirms that whether notice of nonacceptance is adequate is ordinarily a question of fact. While that case held that the trial court's factual findings were supported by competent credible evidence, the evidence in the case at bar is sufficiently controverted to preclude such a holding here.