THOMSON et al., Appellees,

v.

OHIC INSURANCE COMPANY et al., Appellants.

[Cite as *Thomson v. OHIC Ins. Co.*, 150 Ohio App.3d 352, 2002-Ohio-6517.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA2002–03–055 and CA2002–03–064.

Decided Dec. 2, 2002.

Fiehrer, Halcomb & Lane and Stephen C. Lane; Robinson & Lipnickey and James Robinson, for appellees James Thomson, D.O., and Camden Medical Building, Inc.

Robins Preston Beckett Hammond & Sewards and Gary W. Hammond, for appellant OHIC Insurance Company.

Bricker & Eckler, LLP, Catherine M. Ballard and Anne Marie Sferra, for amici curiae Ohio Hospital Association and Ohio State Medical Association, in support of appellant, OHIC Insurance Company.

Scott J. Frederick; Gardner, Ewing & Souza and Gary L. Gardner, for appellants John M. Watkins, Sherri Watkins, and Sean Watkins.

POWELL, Judge.

{¶ 1} In case number CA2002–03–055, defendant-appellant, OHIC Insurance Company ("OHIC"), appeals from the Butler County Common Pleas Court's judgment declaring the rights and responsibilities of several parties with respect to a professional liability insurance policy issued by OHIC to James Thomson, D.O., and his medical corporation, Camden Medical Building, Inc. ("CMB"). OHIC argues that the trial court erred in holding that the policy provided defendants-appellees, Sherri Watkins and her son, Sean, with up to one million dollars in coverage *each* for their loss-of-consortium claims arising from the medical malpractice claim of Sherri's husband and Sean's father, defendant-appellee, John M. Watkins. In case number CA2002–03–064, defendants-appellants, John, Sherri, and Sean Watkins, appeal from that same judgment, arguing that the trial court erred in declaring that the policy does not provide new limits of coverage for any wrongful death action brought by Sherri and Sean if John dies as a result of his injuries during a yearly policy period subsequent to the one in which he made his medical malpractice claim. These appeals have been consolidated for review.

{¶ 2} In June 1999, John M. Watkins suffered a massive stroke. In June 2000, Mr. Watkins brought a medical malpractice action against Dr. Thomson and CMB. Mr. Watkins's wife, Sherri, and their son, Sean, brought loss-of-consortium claims against Dr. Thomson and CMB. At the time of Mr. Watkins's stroke, Thomson and CMB were covered by a professional liability insurance policy

issued by OHIC, which had coverage limits of one million dollars for each person, with a total liability limit of three million dollars.

{¶ 3} In November 2001, Dr. Thomson and CMB filed a complaint for declaratory judgment, asking the trial court to declare the rights and responsibilities of the parties with respect to the policy. OHIC, Mr. Watkins, and his wife and son were all named as defendants in the action.

{¶ 4} On February 12, 2002, the trial court issued a judgment declaring that the policy's "Each Person Limit" provision, which limited coverage to one million dollars for all claims arising out of Dr. Thomson's alleged malpractice, was unenforceable pursuant to *Schaefer v. Allstate Ins. Co.* (1996), 76 Ohio St.3d 553, 668 N.E.2d 913. The trial court held that R.C. 3937.44, which expressly allows insurance policies to treat all claims arising from bodily injury to one person as a single claim, applied only to motor vehicle policies and not to professional liability policies. Specifically, the trial court found that professional liability insurance policies do not fall within the ambit of R.C. 3937.44 because they do not provide coverage for injuries caused by an *accident*. The trial court also found that if Mr. Watkins dies from his injuries after the expiration of the policy year in which he brought his malpractice claim and his wife and son brought their loss of consortium claims, the policy does not provide new limits of coverage for any wrongful death action brought by Sherri and Sean Watkins in that subsequent policy year.

{¶ 5} OHIC and the Watkinses have filed separate appeals from the trial court's judgment.

{¶ 6} OHIC's sole assignment of error states:

{¶ 7} "The trial court erred in its judgment that: (A) R.C. 3937.44 does not apply to medical malpractice liability policies; (B) professional liability policies are not included in the statutory phrase 'any liability policy'; (C) injury caused by negligence including medical negligence is not an 'accident'; and (D) the 'each person limit' in OHIC's (post-S.B.20) policy is unenforceable with respect to this (post S.B. 20) claim under *Schaefer v. Allstate Ins. Co.* (1996) 76 Ohio St.3d 553, 668 N.E.2d 913."

{¶ 8} OHIC essentially argues that the trial court erred by declaring the policy's "Each Person Limit" on coverage unenforceable pursuant to *Schaefer*, and by finding R.C. 3937.44 inapplicable to professional liability insurance policies because losses sustained by occurrences like medical malpractice are not "accidents" covered by that statute. We agree with these arguments.

{¶ 9} The policy at issue obligates OHIC to pay claims involving an allegation of injury or death to a person, for which Dr. Thomson and CMB become legally obligated to pay because of professional services they provided or failed to

provide to that person. As stated in its "coverage summary," the policy is subject to coverage limits of one million dollars for "Each Person," up to a total limit of three million dollars. The policy's coverage limits are further defined in Section IV of the policy, which states:

{¶ 10} "SECTION IV—LIMITS OF COVERAGE

{¶ 11} "A. Two limits apply to the amount we will pay for 'claims'. These limits are shown on the coverage summary and apply as follows:

{¶ 12} "1. The Each Person Limit is the most we will pay for all 'claims' arising out of 'professional services' provided or which should have been provided:

{¶ 13} "a. to any person; * * *

{¶ 14} "* * *

{¶ 15} "Any derivative 'claims' share in the Each Person Limit.

{¶ 16} "2. The total liability limit is the most we will pay for all 'claims' covered by this policy. * * *"

{¶ 17} A "derivative claim" or action is a lawsuit resulting from an injury to another person, such as one spouse's action for loss of consortium arising from an injury to the other spouse caused by a third person. Black's Law Dictionary (7th Ed.1999), at 455. A "loss of consortium" refers to a loss of the benefits that one spouse is entitled to receive from the other or that a child is entitled to receive from his or her parent, including companionship, cooperation, aid, affection, and, between spouses, sexual relations. See id. at 304 (defining "consortium") and 958 (defining "loss of consortium"). Such losses give rise to a cause of action, which can be recoverable as damages in a personal injury or wrongful death action. Id. at 958.

{¶ 18} Under the policy's terms, Sherri and Sean Watkins are not entitled to separate per-person limits of coverage for their loss-of-consortium claims.

{¶ 19} Nevertheless, the Watkinses argue that the policy's "Each Person Limit" is unenforceable pursuant to Schaefer, 76 Ohio St.3d 553, 668 N.E.2d 913. In that case, the Ohio Supreme Court, relying on its prior decision in Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, held that "[e]ach person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable." Schaefer at syllabus. Schaefer was subsequently held applicable to general liability policies as well as uninsured motorist cases. See, e.g., Jones v. U.S.A.A. Ins. Co. (Mar. 31, 2000), Lake App. No. 98–L–253, 2000 WL 522292.

{¶ 20} However, in an effort to overturn *Savoie* and its progeny, the General Assembly passed Senate Bill 20, which added a new section to the Ohio Revised Code, R.C. 3937.44, which states:

{¶ 21} "Any liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one accident, may, notwithstanding Chapter 2125. of the Revised Code, include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."

{¶ 22} The Watkinses argue, and the trial court agreed, that because R.C. 3937.44 specifically refers to liability policies that provide coverage "for bodily injury * * * sustained by any one person in any one *accident* * * *," (emphasis added), the statute applies only to motor vehicle liability policies and not to professional liability policies. However, this contention is at odds with the plain words of the statute, which state that the provision applies to "[a]ny liability policy of insurance *including, but not limited to, automobile liability or motor vehicle liability insurance* * * *." (Emphasis added.) R.C. 3937.44.

{¶ 23} The Watkinses also argue that the occurrence of medical malpractice is not an "accident." The trial court agreed with this argument, finding that an act of professional negligence did not fall within the term "accident." We conclude, however, that an occurrence of medical malpractice falls within the definition of "accident" as that term is used in R.C. 3937.44.

{¶ 24} R.C. Chapter 3937 does not define the term "accident." R.C. 1.42 provides that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." Under Ohio law, the ordinary meaning of "accident," as used in liability insurance policies in which the term is undefined, refers to "unintended and unexpected happenings." *Owens–Illinois, Inc. v. Aetna Cas. & Sur. Co.* (C.A.6, 1993), 990 F.2d 865, 871–872. Furthermore, in interpreting such policies, it has been held that the question of whether an occurrence is an "accident" is viewed from the standpoint of the insured. See *Kish v. Cent. Natl. Ins. Group of Omaha* (1981), 67 Ohio St.2d 41, 48, 21 O.O.3d 26, 424 N.E.2d 288 ("Absent any enforceable contractual provisions to the contrary, the perspective that governs the determination of whether an occurrence is an accident for uninsured motorist and accident insurance purposes

is that of the insured."). We conclude that it is appropriate to apply these principles in determining the common and ordinary meaning of the word "accident" as used in R.C. 3937.44, which applies to "[a]ny liability policy of insurance including, but not limited to, automobile liability or motor vehicle liability insurance[.]"

{¶ 25} In this case, it is undisputed that Mr. Watkins's injuries were unintended and unexpected from the standpoint of both the insured, Dr. Thomson, and the parties alleging coverage under the policy at issue, the Watkinses. There is no question that Dr. Thomson did not intend to injure Mr. Watkins, nor did Dr. Thompson expect that his treatment of Mr. Watkins would result in injury to him. Therefore, Dr. Thomson's alleged malpractice constituted an "accident" for purposes of R.C. 3937.44.

{¶ 26} Accordingly, we conclude that the trial court erred in finding R.C. 3937.44 inapplicable to this case. Because that statute does apply, the policy's "Each Person Limit" is enforceable. Hence, Sherri and Sean Watkins are not entitled to separate per-person limits of coverage for their loss of consortium claims, but, instead, must share in the same Each Person Limit as John Watkins.

{¶ 27} OHIC's assignment of error is sustained.

{¶ 28} In their appeal, the Watkinses present the following proposition of law, which we shall treat as their assignment of error:

{¶ 29} "A medical malpractice insurer cannot combine limits of liability for separate and distinct bodily injury and wrongful death that occur during different policy periods under a 'claims made' policy."

{¶ 30} The Watkinses contend that the trial court erred in finding that if Mr. Watkins dies from his injuries after the expiration of the policy year in which he brought his malpractice claim and his wife and son brought their loss-of-consortium claims, the policy would not provide new limits of coverage for any wrongful death action brought by Sherri and Sean Watkins in that subsequent policy year. The Watkinses argue that when a claim for bodily injury and a claim for wrongful death arise during separate policy periods under a professional liability "claims made" policy, separate liability limits should be held to apply during each "claims made" policy period, even when the claims arise from the same act of alleged medical malpractice. We disagree with this argument.

{¶ 31} Section I of the policy reads in relevant part:

{¶ 32} "SECTION I—INSURING AGREEMENT

{¶ 33} "A. 'Claims' Covered By This Policy

{¶ 34} "1. We will pay 'claims' which the 'insured' becomes legally obligated to pay because of 'professional services' provided or which should have been provided. * * *

{¶ 35} "* * *

{¶ 36} "2. We will consider a 'claim' first made at the earlier of the following times:

{¶ 37} "a. when the 'insured' first gives us written notice that a 'claim' has been made; or

{¶ 38} "b. when the 'insured' first gives us written notice of incidents or circumstances which may result in a 'claim'."

{¶ 39} Section IV of the policy states:

{¶ 40} "SECTION IV—LIMITS OF COVERAGE

{¶ 41} "* * *

{¶ 42} "B. The Limits of Coverage apply separately to each consecutive annual period * * *.

{¶ 43} "C. If a 'claim' is first reported to us during the policy period or any applicable extended reporting period alleging injury or death arising from 'professional services' provided or which should have been provided to the same person on a repeated basis or involving the continuous treatment of the same illness, injury, or condition, that 'claim' will be considered a single 'claim' under this policy, regardless of whether the 'professional services' were provided during more than one policy period and the 'claim' will be subject exclusively to the Limits of Coverage of the current policy."

{¶ 44} As the trial court stated in rejecting the claim the Watkinses are now raising on appeal:

{¶ 45} "The policy is rather specific. It only covers claims for professional negligence that are made during the policy year in which the insured first gave written notice of *incidents or circumstances which may result in a claim.* This notice was given by the Watkinses in the policy year April 1, 2000 to April 1, 2001 and the limits of coverage applicable to that policy year control the extent of the liability of the defendant for all claims made during that year. This would include any claim made for a death which occurs in a * * * policy year [subsequent to the policy year in which] the claim was first made * * *." (Emphasis sic.)

{¶ 46} The Watkinses essentially acknowledge that the terms of the policy do not support their position, but argue, nonetheless, that we should find those provisions unenforceable. However, the Watkinses have failed to provide us with

a convincing rationale for ignoring the plain, unambiguous terms of the policy, nor can we think of any.

{¶ 47}  In light of the foregoing, the Watkinses' assignment of error is overruled.

{¶ 48}  The trial court's judgment in case number CA2002–03–055 is reversed with respect to its findings that R.C. 3937.44 is inapplicable to professional liability policies, that the Each Person Limit provision of the liability policy in question is unenforceable, and that the Watkinses are each entitled to a separate per-person limit with respect to Dr. Thomson and CMB's professional liability policy with OHIC. Pursuant to App.R. 12(B), judgment is hereby entered in OHIC's favor with respect to those issues.  The trial court's judgment in case number CA2002–03–064 is affirmed.

Judgment accordingly.

WALSH, P.J., and VALEN, J., concur.