DECISION AND JUDGMENT ENTRY
{¶ 1} Plaintiffs-Appellants Amanda M. Cross and Carla DeMint appeal the judgment of the trial court, which granted summary judgment in favor of Defendants-Appellees The Cincinnati Insurance Company (Cincinnati), State Automobile Mutual Insurance Company (State Auto), and Federated Rural Electric Insurance Exchange (Federated). Appellants argue that the insurance policies issued by appellees afford them underinsured motorists coverage. Specifically, appellants assert that the Cincinnati and State Auto policies permit the stacking of coverage limits and do not limit claims derivative of a bodily injury to the "per person" limits found in the policies. Finally, appellants assert that under the Federated policy, they were not required to notify Federated of any settlement agreement as a condition precedent to maintaining an underinsured motorist claim against Federated.
 {¶ 2} For the reasons that follow, we disagree with appellants' arguments and affirm the judgment of the trial court.
 Proceedings Below {¶ 3} On September 26, 1997, Amanda Cross was injured in an automobile accident. The vehicle in which Amanda was traveling was being driven by her cousin Janelle L. DeMint when it left the roadway and struck a utility pole. As a result of the accident, Amanda incurred medical expenses in excess of $100,000. At the time of the accident, Amanda's cousin was insured against liability, up to $100,000, under a policy State Auto issued to her father. Under the liability portion of the policy, $5,279.55 was paid to other claimants who suffered damages due to the accident. The remainder of the liability coverage, $94,730.45, was paid to Amanda in settlement of her claims against Janelle.
 {¶ 4} In addition to the liability coverage, however, the State Auto policy also provided for underinsured motorists (UIM) coverage of $100,000 per accident. As a passenger in Janelle's vehicle, Amanda was an insured under the State Auto policy's UIM coverage. Also, at the time of the accident, Amanda's mother, Carla DeMint, was the named insured under an insurance policy issued to her by Cincinnati. Amanda was also an insured or "covered person" under this policy. The policy provided UIM coverage of $100,000 for each person and $300,000 per accident. Accordingly, Amanda sought payment for damages under both State Auto's and Cincinnati's UIM coverage.
 {¶ 5} In September 1999, Carla filed a complaint with the Adams County Court of Common Pleas on her own behalf and on behalf of Amanda, seeking payment for damages under the UIM coverage of State Auto's and Cincinnati's policies. Appellants alleged that Janelle's negligence had caused the accident and resulting injuries to Amanda. Carla also presented a loss of consortium claim, derivative of her daughter's claim. The parties subsequently entered into a stipulation of evidence and filed motions for summary judgment, which were denied. Thereafter, Amanda attained the age of majority and was substituted as a party to the action in lieu of her mother.
 {¶ 6} In February 2001, the parties filed an agreed journal entry adding a third defendant to the action. At the time of the accident, Carla's employer, Adams Rural Electric Cooperative, Inc., was insured under a policy issued by Federated. Accordingly, an amended complaint was filed asserting all prior claims against State Auto and Cincinnati, but adding a claim pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292, 710 N.E.2d 1116, and Ezawa v. YasudaFire Marine Ins. Co. of Am., 86 Ohio St.3d 557, 1999-Ohio-124,715 N.E.2d 1142, against Federated. Federated filed its answer and subsequently entered into a stipulation with appellants, stating that appellants entered into a release with the tortfeasors without giving notice of the potential claim to Federated or giving Federated an opportunity to pay the claims in order to protect its subrogation rights.
 {¶ 7} In May 2001, Carla dismissed her claim against State Auto with prejudice.
 {¶ 8} Federated filed a motion for summary judgment arguing that appellants' failure to protect Federated's subrogation rights voided coverage under the policy. Federated also argued that appellants' failure to give timely notice of a potential claim was a breach of the policy, negating coverage. The trial court agreed with Federated, finding that the policy provided specific duties for a claimant under the policy and that appellants failed to timely notify Federated of the potential claim or their intention to enter into a release with Janelle and her father. Accordingly, the trial court granted summary judgment in favor of Federated. In addition, the trial court reconsidered its prior denial of Cincinnati's motion and granted summary judgment in Cincinnati's favor.
 {¶ 9} Appellants appealed the decision of the trial court granting summary judgment in favor of Federated and Cincinnati. This Court dismissed appellants' appeal for lack of a final appealable order because Amanda's claims against State Auto remained unresolved. See Cross v.Cincinnati Ins. Co., Adams App. No. 01CA718, 2002-Ohio-1371. On remand, the trial court granted summary judgment in favor of State Auto on Amanda's claims.
 The Appeal {¶ 10} Appellants timely filed their notice of appeal and present the following assignments of error for our review.
 {¶ 11} First Assignment of Error: "The trial court erred in granting summary judgment to Defendant, The Cincinnati Insurance Company."
 {¶ 12} Second Assignment of Error: "The trial court erred in granting summary judgment to Defendant, State Automobile Mutual Insurance Company."
 {¶ 13} Third Assignment of Error: "The trial court erred in granting summary judgment to Defendant, Federated Rural Electric Insurance Exchange."
 {¶ 14} We will discuss appellants' First and Second Assignments of Error conjointly, as this is more conducive to our analysis. Furthermore, these two assignments of error raise two issues for our review: 1) whether Cincinnati's policy provided for the consolidation of derivative claims into one claim under the per person limits of a policy, and (2) whether the Cincinnati and State Auto policies prohibited the stacking of UIM coverage limits from multiple policies. We will address each issue in turn.
 {¶ 15} Appellants' Third Assignment of Error exclusively concerns coverage under the policy issued by Federated. Subsequent to appellants' filing of their notice of appeal and the briefing of the issues presented in their appeal, appellants and Federated filed a stipulation of dismissal pursuant to App.R. 28. Consequently, Federated was dismissed from the appeal and appellants' Third Assignment of Error is moot. Accordingly, we will not address appellants' final assignment of error.
I. Standard of Review — Summary Judgment
 {¶ 16} We conduct a de novo review of a trial court's decision to grant summary judgment pursuant to Civ.R. 56. See Renner v. DerinAcquisition Corp. (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. The Supreme Court of Ohio has established the test to be employed when making a determination regarding a motion for summary judgment.
 {¶ 17} "Under Civ.R. 56, summary judgment is proper when `(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.'" Welco Industries, Inc. v. Applied Cos.,67 Ohio St.3d 344, 346, 1993-Ohio-191, 617 N.E.2d 1129 (citations omitted).
 {¶ 18} Therefore, upon review, we give no deference to the judgment of the trial court. See Renner v. Derin Acquisition Corp., supra.
II. Interpretation of Insurance Contracts
 {¶ 19} When interpreting an automobile liability insurance policy, courts must employ the statutory law in effect at the time of contracting or renewal. See Ross v. Farmers Ins. Group of Cos., 82 Ohio St.3d 281,287-288, 1998-Ohio-381, 695 N.E.2d 732. The interpretation of an automobile liability insurance policy presents a question of law that an appellate court reviews without deference to the trial court. See, e.g.,Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm, 73 Ohio St.3d 107,108, 1995-Ohio-214, 652 N.E.2d 684; Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. In interpreting an automobile liability insurance policy, when the language used is clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning. See Cincinnati Indemn. Co. v. Martin, 85 Ohio St.3d 604,607, 1999-Ohio-322, 710 N.E.2d 677.
 {¶ 20} A clear, unambiguous underinsured motorist coverage provision is valid and enforceable as long as the provision is not "contrary to the coverage mandated by R.C. 3937.18(A)." Moore v. StateAuto. Mut. Ins. Co., 88 Ohio St.3d 27, 28-29, 2000-Ohio-264, 723 N.E.2d 97; see, also, Schaefer v. Allstate Ins. Co., 76 Ohio St.3d 553, 555,1996-Ohio-368, 668 N.E.2d 913 (stating that a court should not deem an insurance policy provision unenforceable unless the provision is contrary to the statute and contrary to the statute's purpose). Provisions in an automobile liability insurance policy that vary from statutory requirements are unenforceable. See Ross v. Farmers Ins. Group of Cos.,82 Ohio St.3d at 287.
 {¶ 21} Moreover, when construing an underinsured motorist coverage provision in an automobile liability insurance policy, a court should remain "mindful of the basic tenet that the purpose of [underinsured] motorist coverage and its mandatory offering is `to protect persons from losses which, because of the tortfeasor's lack of [adequate] liability coverage, would otherwise go uncompensated.'" Id., 76 Ohio St.3d at 555
(quoting Martin v. Midwestern Group Ins. Co., 70 Ohio St.3d 478, 480,1994-Ohio-407, 639 N.E.2d 438); see, also, Moore v. State Auto. Mut.Ins. Co., 88 Ohio St.3d at 31.[1]
 {¶ 22} With these principles in place, we now turn to the specific arguments presented by appellants.
III. Derivative Claims and Stacking
 {¶ 23} Appellants assert that as an insured under both the State Auto and Cincinnati policies, Amanda is permitted to recover up to the limit on both policies, which totals $200,000. Further, appellants assert that Cincinnati's policy language does not clearly provide for the consolidation of all claims derivative of a bodily injury claim. Accordingly, they conclude that Carla's claim for loss of consortium is an independent claim and should be subject to a $100,000 limit separate from the limit applied to Amanda's bodily injury claim.
A. Savoie and Subsequent Amendments to R.C. 3937.18
 {¶ 24} In Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500,620 N.E.2d 809, the Supreme Court of Ohio was presented with an opportunity to interpret Ohio's UM/UIM law, R.C. 3937.18. In so doing, the court held in part that, "Each person, who is covered by an uninsured/underinsured policy and who is presumed to be damaged pursuant to R.C. 2125.01, has a separate claim subject to a separate per person policy limit." Id. at paragraph four of the syllabus. Subsequently, the Supreme Court of Ohio applied this holding to loss of consortium claims. In Schaefer v. Allstate Ins. Co., 76 Ohio St.3d 553, syllabus, the court held that, "Each person who is covered by an uninsured motorist policy and who is asserting a claim for loss of consortium has a separate claim subject to a separate per person policy limit. A provision in an insurance policy which reaches a contrary result is unenforceable."
 {¶ 25} The Savoie Court also held that insurers may include policy provisions limiting intrafamily stacking of UM/UIM limits, but may not limit interfamily stacking of such limits. The Supreme Court of Ohio specifically held that, "Insurers may contractually preclude intrafamily stacking — the stacking of uninsured/underinsured limits of policies and coverages purchased by family members living in the same household. Insurers may not contractually preclude interfamily stacking — the aggregation of uninsured/underinsured limits of policies purchased by two or more people who are not members of the same household." Savoie v. Grange Mut. Ins. Co., 67 Ohio St.3d 500, at paragraph two of the syllabus.
 {¶ 26} In response to these holdings of the Supreme Court of Ohio, the General Assembly passed S.B. No. 20, amending R.C. 3937 and effectively overruling both Savoie and Schaefer. See Hood v. Rose,153 Ohio App.3d 199, 2003-Ohio-3268, 792 N.E.2d 736; Carmon v. NationwideMut. Ins. Co., 144 Ohio App.3d 686, 2001-Ohio-2526, 761 N.E.2d 134
(citing Post v. Harber, Vinton App. No. 00-CA-541, 2001-Ohio-2401; Plottv. Colonial Ins. Co. (1998), 126 Ohio App.3d 416, 710 N.E.2d 740; Justicev. State Farm Ins. Co. (2000), 145 Ohio App.3d 359, 763 N.E.2d 186;Greiner v. Timm (Mar. 28, 2000), 10th Dist. No. 99AP-618, appeal not allowed (2000), 89 Ohio St.3d 1466, 732 N.E.2d 998; Maric v. Adams (Mar. 31, 2000), 11th Dist. No. 98-L-142, affirmed 92 Ohio St.3d 209,2001-Ohio-154, 749 N.E.2d 289; Francis v. McClandish (Apr. 19, 1999), Athens App. No. 98CA21; Smock v. Hall (1999), 132 Ohio App.3d 478,725 N.E.2d 673, discretionary appeal allowed (1999), 86 Ohio St.3d 1406,711 N.E.2d 233, appeal dismissed 87 Ohio St.3d 1250, 2000-Ohio-250,722 N.E.2d 521).
 {¶ 27} R.C. 3937.18(H) provides that any automobile liability insurance policy that includes underinsured motorist coverage may limit all claims arising out of any single individual's bodily injury to the per-person limit set forth in the insurance policy. R.C. 3937.38(H) provides:
 {¶ 28} "Any automobile liability * * * policy of insurance that includes [underinsured motorist coverage] * * * and that provides a limit of coverage for payment for damages for bodily injury, including death, sustained by any one person in any one automobile accident, may * * * include terms and conditions to the effect that all claims resulting from or arising out of any one person's bodily injury, including death, shall collectively be subject to the limit of the policy applicable to bodily injury, including death, sustained by one person, and, for the purpose of such policy limit shall constitute a single claim. Any such policy limit shall be enforceable regardless of the number of insureds, claims made, vehicles or premiums shown in the declarations or policy, or vehicles involved in the accident."
 {¶ 29} The import of the foregoing provision is to permit automobile insurers to limit all claims, including loss of consortium claims, arising out of any single individual's bodily injury to the per-person limit shown in the insurance policy. See Clark v. Scarpelli,91 Ohio St.3d 271, 2001-Ohio-39, 744 N.E.2d 719 (recognizing that R.C.3937.18(H) permits insurers to consolidate wrongful death claims, even though each wrongful death claimant has a "separate and distinct" claim); Maric v. Adams, supra (noting that R.C. 3937.18(H) "specifically authorize[s] insurers to limit multiple derivative claims, such as claims for loss of consortium, to a single per-person coverage limit").
 {¶ 30} Likewise, R.C. 3937.18 permits insurance companies to prohibit the stacking of UM/UIM policy limits. See Wallace v. Balint,94 Ohio St.3d 182, 2002-Ohio-480, 761 N.E.2d 598, reconsideration denied94 Ohio St.3d 1508, 764 N.E.2d 1037; Roberts v. Wausau Business Ins.Co., 149 Ohio App.3d 612, 2002-Ohio-4734, 778 N.E.2d 594; Lemble v.Belknap, 147 Ohio App.3d 79, 2001-Ohio-3108, 768 N.E.2d 1196. R.C.3937.18(G) provides:
 {¶ 31} "Any automobile liability or motor vehicle liability policy of insurance that includes [UM/UIM coverage] may, without regard to any premiums involved, include terms and conditions that preclude any and all stacking of such coverages, including but not limited to:
 {¶ 32} "(1) Interfamily stacking, which is the aggregating of the limits of such coverages by the same person or two or more persons, whether family members or not, who are not members of the same household;
 {¶ 33} "(2) Intrafamily stacking, which is the aggregating of the limits of such coverages purchased by the same person or two or more family members of the same household."
B. Carla's Loss of Consortium Claim
 {¶ 34} Regarding its limits, Cincinnati's policy provides the following:
 {¶ 35} "The limit of bodily injury liability shown in the Declarations for `each person' for Uninsured Motorists Coverage is our maximum limit of liability for all damages due to or arising out of abodily injury sustained by any one person in any one accident.
 {¶ 36} "* * *.
 {¶ 37} "These limits are the most we will pay regardless of the number of:
 {¶ 38} "1. Policies involved;
 {¶ 39} "2. Covered persons;
 {¶ 40} "3. Claims made;
 {¶ 41} "4. Vehicles or premiums shown in the Declarations; or
 {¶ 42} "5. Vehicles involved in the accident." (Emphasis sic.)
 {¶ 43} Cincinnati asserts that this language acts to consolidate all claims derivative of a bodily injury into one claim subject to the per person limits of the policy. Appellants assert that this language is ambiguous and subject to multiple interpretations, and thus, should be construed against Cincinnati to permit Carla's claim to proceed as an independent claim subject to its own per person limit.
 {¶ 44} "[A] cause of action based upon a loss of consortium is a derivative action. That means that the derivative action is dependent upon the existence of a primary cause of action and can be maintained only so long as the primary action continues." Messmore v. Monarch Mach. ToolCo. (1983), 11 Ohio App.3d 67, 68-69, 463 N.E.2d 108; see, also, Gearingv. Nationwide Ins. Co., 76 Ohio St.3d 34, 1996-Ohio-113, 665 N.E.2d 1115;Thomson v. OHIC Ins. Co., 150 Ohio App.3d 352, 2002-Ohio-6517,780 N.E.2d 1082, at ¶ 17 (stating that, "A `derivative claim' or action is a lawsuit resulting from an injury to another person, such as one spouse's action for loss of consortium arising from an injury to the other spouse caused by a third person."). A "derivative" action is one that derives from or is based on another claim. In other words, a "derivative" claim is one that is said to "arise from" or "arise out of" the existence of another claim. See "derive from." Merriam-Webster OnlineThesaurus. 2002. http://www.merriam-webster.com (27 Oct. 2003); see, also, Odom v. Davis, Athens App. No. 02CA43, 2003-Ohio-3316, at ¶ 30; Carmon v. Nationwide Mut. Ins. Co., 144 Ohio App.3d 686; Davidson v.Uhrig, Ross App. No. 00CA2543, 2001-Ohio-2492.
 {¶ 45} Policy language similar to the claim consolidation provision in the case sub judice has been found to clearly and unambiguously express an insurer's intent to consolidate derivative claims and thereby limit liability for those claims to the "per person" limits of a policy. See Fleming v. Wallace, 7th Dist. No. 01-BA-64, 2002-Ohio-6003, at ¶ 14-15; Campo v. Daniel, 8th Dist. No. 81419, 2002-Ohio-7257, at ¶ 8-10; Grant v. Ladd, 3rd Dist. No. 4-01-09, 2001-Ohio-2; Pearston v.Colonial Ins. Co. (May 2, 2001) 9th Dist. No. 00CA007751; Francis v.McClandish (Apr. 19, 1999), Athens App. No. 98CA21. For instance, in Webbex rel. Webb v. Progressive Ins. Co., 10th Dist. No. 01AP-534, 2001-Ohio-4056, the court held that the language of the policy in question was "quite clear." The Webb policy provided in pertinent part, `[t]he bodily injury Limit of Liability * * * includes the total of all claims made for such bodily injury and all claims derived from such bodily injury.' The Webb Court held that "the language at issue here clearly consolidates all claims into a single claim." Id.
 {¶ 46} Accordingly, we find that the Cincinnati policy language clearly acts to limit Cincinnati's liability to the "per person" limit ($100,000) for claims derivative of (i.e., arising out of) a bodily injury. In other words, both Amanda's and Carla's claims are consolidated into a single claim subject to the "per person" limit.
C. Stacking of State Auto's and Cincinnati's UIM Coverages
 {¶ 47} Next, appellants assert that the policies of both State Auto and Cincinnati fail to clearly and unambiguously prohibit the stacking of policy limits. Accordingly, appellants conclude that Amanda is limited to $200,000 of UIM coverage ($100,000 per insurer) instead of a total limit of $100,000.
 {¶ 48} Cincinnati's policy contains the following "Other Insurance provision:
 {¶ 49} "If there is other applicable similar insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
 {¶ 50} "If this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance."
 {¶ 51} Similarly, State Auto's policy provides as follows, concerning "Other Insurance":
 {¶ 52} "If there is other applicable similar insurance available under more than one policy of provision of coverage:
 {¶ 53} "1. Any recovery for damages for `bodily injury' sustained by an `insured' may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.
 {¶ 54} "2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.
 {¶ 55} "3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."
 {¶ 56} In Hower v. Motorists Mut. Ins. Co., 65 Ohio St.3d 442,447, 1992-Ohio-74, 605 N.E.2d 15, the Supreme Court of Ohio held that "the language in an automobile insurance policy that `[i]f this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy" is not ambiguous and is a valid anti-stacking provision.' We note, however, thatHower was overruled by the Supreme Court of Ohio in Savoie. See Savoiev. Grange Mut. Ins. Co., 67 Ohio St.3d at 507 (invalidating insurance provisions that prohibit interfamily stacking and overruling Hower). Nevertheless, since Savoie was legislatively overruled, other districts have returned to the Hower holding for guidance. See Campo v. Daniel,
Cuyahoga Cty.App. No. 81419, 2002-Ohio-7257, at ¶ 43; Lemble v.Belknap (Sept. 30, 1999), 6th Dist. No. L-98-1417.
 {¶ 57} The policies at issue in the case sub judice contain language essentially the same as that considered by the Hower Court. Accordingly, we find that the "Other Insurance" provisions contained in Cincinnati's and State Auto's policies are clear, unambiguous, and valid anti-stacking provisions. See Hower, Campo, and Lemble, supra; Harris v.Shy (May 12, 2000), 6th Dist. No. L-99-1278.
D. The Difference Between the Amount Amanda Recovered and the UIMLimits
 {¶ 58} Appellants' final argument concerning their First and Second Assignments of Error is that Amanda is entitled to recover from State Auto the difference between the amount she recovered under the liability coverage ($94,730.45) and the UIM per person limit ($100,000). Simply put, Amanda asserts that State Auto is liable to her for $5,269.55 under the UIM coverage.
 {¶ 59} State Auto argues that its policy limits its total liability under all coverages to $100,000. Since State Auto has paid $100,000 in damages ($5,269.55 to third parties and $94,730.45 to Amanda), the insurer concludes that it has paid out the limits of the policy and Amanda is not entitled to any recovery under the UIM coverage. State Auto's policy provides the following limitation in both the Liability and UIM sections:
 {¶ 60} "The following provision applies if the Declarations indicates a single limit:
 {¶ 61} "The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.
 {¶ 62} "* * *
 {¶ 63} "This is the most we will pay regardless of the number of:
 {¶ 64} "1. `Insureds';
 {¶ 65} "2. Claims made;
 {¶ 66} "3. Vehicles or premiums shown in the Declarations; or
 {¶ 67} "4. Vehicles involved in the accident."
 {¶ 68} Aside from their blanket assertion that Amanda is entitled to recover $5,269.55 from State Auto under the UIM coverage, appellants fail to support that assertion with a cogent argument. Appellants do not assert that the aforementioned provision is invalid or unenforceable. The clear meaning of this provision is that State Auto will be liable for no more than $100,000 of damages arising from any one accident. That limit has already been met.
E. Conclusion of First and Second Assignments of Error
 {¶ 69} In conclusion, we find that Cincinnati's policy contained a valid derivative-claim-consolidation provision. We also find that both Cincinnati's and State Auto's policies contained valid anti-stacking provisions. Finally, we find that State Auto's policy limits the insurer's maximum liability arising from any one accident to $100,000, regardless of the number of claims or individuals involved. Accordingly, we overrule appellants' First and Second Assignments of Error.
 Conclusion {¶ 70} Since no material issues of fact exist and appellees are entitled to judgment as a matter of law, we overrule appellants' assignments of error in toto. Thus, we affirm the judgment of the trial court.
Judgment affirmed.
Abele, J. and Kline, J., Concur in Judgment Only.
[1] We note that on October 31, 2001, the Ohio General Assembly enacted S.B. No. 97, which significantly changed UM/UIM coverage in Ohio. Pursuant to the recently amended version of R.C. 3937.18, automobile liability insurers are no longer required to offer UM/UIM coverage.