OPINION
{¶ 1} Plaintiffs-appellants, Denise K. Bebout, individually, and in her capacity as administrator of the estate of Jason Bebout, deceased, and parent and next friend of Jeremiah Bebout and Timberlie and Timothy Dunn, minors, and Robert and Mary Rinehart, appeal from a judgment of the Franklin County Court of Common Pleas denying their motion for partial summary judgment and granting the summary judgment motion of defendant-appellee, Grange Mutual Casualty Company ("Grange"). Because the trial court properly granted summary judgment to Grange and properly denied plaintiffs' motion for partial summary judgment, we affirm.
 {¶ 2} On February 1, 2001, defendant Charles D. Tindall was driving a motor vehicle when he struck and killed Jason Bebout, a pedestrian. At the time of the accident, Tindall was insured under a policy of automobile liability insurance American Family Insurance Group issued with liability limits of $50,000 per person and $100,000 per accident.
 {¶ 3} Jason was survived by, and resided in the same household with, his mother, Denise, his grandparents, the Rineharts, and his three siblings, Jeremiah, Timberlie and Timothy. At the time of the accident, Denise was the named insured on an automobile policy Grange issued; Robert Rinehart was the named insured on a separate automobile policy Grange issued. Both policies contain uninsured/underinsured motorist ("UM/UIM") coverage with limits of $100,000 per person and $300,000 per accident. The parties do not dispute that as family members living in the same household, each of the Bebouts, Rineharts, and Dunns qualify as insureds under each of the policies.
 {¶ 4} Denise apparently filed a UM/UIM claim with Grange for damages arising out of Jason's death, seeking coverage for herself, the estate, and the other statutory wrongful death beneficiaries in the amount of the per person limit of each of the policies, up to the combined per accident limits of the policies. Following Grange's refusal to acknowledge entitlement to such coverage, Denise filed a complaint seeking wrongful death damages pursuant to R.C. Chapter 2125 on behalf of herself and the other statutory wrongful death beneficiaries. The complaint also included a survivorship claim on behalf of Jason's estate and a declaratory judgment action seeking the policies' UIM benefits.
 {¶ 5} Grange filed a motion for summary judgment, contending plaintiffs' attempt to stack the UIM coverages provided in the policies was impermissible, as the policies contained identical provisions precluding intrafamily stacking. Grange thus argued plaintiffs were limited to coverage not exceeding the policy with the highest per person limit of UIM coverage.
 {¶ 6} In their combined cross-motion for partial summary judgment and memorandum in opposition, plaintiffs argued that the purported anti-stacking provisions contained in the Bebout and Rinehart policies are not identical, and that neither provision clearly and unambiguously precludes stacking the coverage available in the two policies. Plaintiffs further argued that each plaintiff is entitled to recover upon his or her separate claim up to the per person limit of the two policies, not to exceed, collectively, the combined per accident limit of the policies, as Grange failed to employ clear and unambiguous language under either of the policies limiting all claims of all insureds to the per person policy limit. Finally, plaintiffs argued that Grange's offset against the combined coverages is restricted to an amount not to exceed Tindall's liability coverage limit of $50,000.
 {¶ 7} Grange filed a memorandum in opposition to plaintiffs' cross-motion for summary judgment, arguing that R.C. 3937.18 and the policy language included in both polices limit plaintiffs' coverage from both policies collectively to $100,000, less any payment received from Tindall's policy.
 {¶ 8} The trial court granted Grange's summary judgment motion. In particular, the court determined the anti-stacking language contained in the policies is identical, valid and enforceable, thus precluding plaintiffs' attempt to stack the coverages of the two policies. The trial court also concluded plaintiffs are not entitled to the per accident limits of the policies, but to the $100,000 per person limit, since only one person sustained bodily injury. Finally, the trial court determined the $100,000 policy limit may be reduced by the $50,000 collectively available to plaintiffs from Tindall's liability insurer.
 {¶ 9} Plaintiffs timely appeal, assigning the following two errors:
Assignment of Error #1
The trial court erred in failing to hold as a matter of law that the administrator (on behalf of the estate of the decedent and all wrongful death beneficiaries) and each of the individual plaintiffs are insureds and that each is separately entitled to underinsured motorist coverage up to the "each person" limit of each policy not to exceed, in the aggregate, the combined "each accident" limits under the two policies issued by Defendant Grange Mutual Casualty Company to members of plaintiff's household.
Assignment of Error #2
The trial court erred to the extent it held that Appellee Grange is entitled to a setoff against applicable underinsured motorist coverage limits of the amount of the tortfeasor's liability coverage rather than to an offset against the respective limits of underinsured motorist coverage to which each Plaintiff is entitled of the amount available for payment from the tortfeasor to each Plaintiff.
 {¶ 10} Because plaintiffs' assignments of error arise out of the trial court's ruling on the parties' motions for summary judgment, we view the disposition independently and without deference to the trial court's determination. Brown v. SciotoCty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. In conducting our review, this court applies the same standard the trial court employed. Maust v. Bank One, Columbus, N.A. (1992),83 Ohio App.3d 103, 107, jurisdictional motion overruled (1993),66 Ohio St.3d 1488. Summary judgment should be rendered only where the evidence demonstrates that: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C);State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181, 183.
 {¶ 11} In Ross v. Farmers Ins. Group of Cos. (1998),82 Ohio St.3d 281, the Ohio Supreme Court held that the statutory law in effect at the time of contracting for insurance or renewing the policy defines the scope of UM/UIM coverage. Here, the parties agree that R.C. 3937.18, as amended by Am.Sub.S.B. No. 20, effective October 20, 1994, is the applicable law. Accordingly, we do not apply amended provisions effective September 3, 1997, November 2, 1999, and September 21, 2000, which did not significantly affect the areas at issue in this appeal; nor do we apply the most recent amendment to the statute, enacted on October 31, 2001 pursuant to S.B. No. 97, which significantly changed UM/UIM coverage in Ohio.
 {¶ 12} Interpretation of an automobile liability insurance policy presents a question of law that is reviewed without deference to the trial court. See, e.g., Nationwide Mut. FireIns. Co. v. Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108. When the language utilized in an insurance policy is clear and unambiguous, the policy must be enforced as written, giving words used in the policy their plain and ordinary meaning. SeeCincinnati Indemn. Co. v. Martin (1999), 85 Ohio St.3d 604,607. However, "[w]here provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." Clark v. Scarpelli (2001), 91 Ohio St.3d 271,282, quoting King v. Nationwide Ins. Co. (1988),35 Ohio St.3d 208, syllabus.
 {¶ 13} Plaintiffs' first assignment of error raises two issues for our review: (1) whether the policies at issue include clear, unambiguous and enforceable provisions limiting all of plaintiffs' claims to the "each person" limits of the policies, and (2) whether the policies at issue include clear, unambiguous and enforceable provisions precluding the stacking of UM/UIM coverage limits.
 {¶ 14} Former R.C. 3937.18(H) provides that any automobile liability policy of insurance including UM/UIM coverage may limit all claims arising out of any single individual's bodily injury, including death, to the per person limits set forth in the policy. See Clark, supra (recognizing that former R.C.3937.18[H] permits insurers to include provisions in their policies that consolidate all individual wrongful death claims arising out of any one person's bodily injury into a single claim subject to a single per person policy limit, even though each wrongful death claimant has a "separate and distinct" claim). Although an insurer is not required to use the exact wording set forth in former R.C. 3937.18(H), the policy language must clearly and unambiguously so limit all claims in order to give effect to the limit. Id. at 282.
 {¶ 15} Similarly, former R.C. 3937.18(G) permits insurers to preclude the stacking of UM/UIM policy limits, regardless of whether such stacking attempts are "intrafamily" or "interfamily," and regardless of whether there is any evidence of a discount in the premium charged. See Wallace v. Balint,94 Ohio St.3d 182, 2002-Ohio-480.
 {¶ 16} The Bebout and Rinehart policies contain identical "Limit of Liability" language, which states:
A. The limit of liability shown in the declarations under Uninsured [or Underinsured] Motorists Coverage for" each person" is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out ofbodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person," the limit of Bodily Injury Liability shown in the declarations for "each accident" for Uninsured [or Underinsured] Motorists Coverage isour maximum limit of liability for all damages for bodilyinjury sustained by two or more persons resulting from any one accident. This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the declarations; or
4. Vehicles involved in the accident.
 {¶ 17} Grange contends that, in accordance with former R.C.3937.18(H), the foregoing policy language acts to limit all claims arising out of Jason's death to the "each person" limits of the policies. Plaintiffs assert that the policy language is ambiguous and thus should be construed against Grange to permit plaintiffs' claims to proceed as individual claims, each subject to the per person limit. In support of their argument, plaintiffs cite Moore v. State Auto. Mut. Ins. Co. (2000),88 Ohio St.3d 27, suggesting that its holding guides our determination of whether Grange clearly and unambiguously has limited its liability for all claims to the "each person" limit of $100,000.
 {¶ 18} In that case, Randy Moore was killed in an automobile accident due to the negligence of an uninsured motorist. Randy's mother was neither involved in the accident nor sustained any bodily injury from the accident. At the time of the accident, Randy's mother was the named insured on a policy of automobile liability insurance State Automobile Mutual Insurance Company ("State Auto") issued, and the policy included UM/UIM coverage. Randy was not a named insured on his mother's policy, did not reside with his mother, and was not occupying a vehicle covered under her policy.
 {¶ 19} Randy's mother filed a UM/UIM claim with State Auto for her damages arising out of the death of her son. After State Auto denied her claim, she filed a lawsuit, asserting that, pursuant to R.C. 2125.02, she was presumed to have suffered damages as a result of her son's wrongful death. She further contended she was entitled to receive compensation for those damages from State Auto, up to the policy limit, under the UM/UIM portion of the policy. State Auto contended that a policy provision limiting payment for "damages which an `insured' is legally entitled to recover from the owner or operator of an `uninsured motor vehicle' because of `bodily injury' * * * [s]ustained by an `insured' * * * and * * * [c]aused by an accident" precluded her from receiving any UM/UIM benefits, as Randy was not an insured under the policy and the insured, Randy's mother, did not sustain bodily injury as a result of the accident.
 {¶ 20} The Ohio Supreme Court held in Moore, at the syllabus:
R.C. 3937.18(A)(1), as amended by Am.Sub.S.B. No. 20, does not permit an insurer to limit uninsured motorist coverage in such a way that an insured must suffer bodily injury, sickness, or disease in order to recover damages from the insurer.
 {¶ 21} Here, plaintiffs contend that the insuring language of the UM/UIM provisions of their policies is identical to that invalidated in Moore. To comply with R.C. 3937.18(A)(1) andMoore, plaintiffs assert that the term "bodily injury" must be interpreted consistently throughout the policy to include the wrongful death statutory beneficiaries' claims for mental anguish and loss of support, services and society arising from Jason's wrongful death. Plaintiffs thus contend that the "Limit of Liability" provisions, which incorporate the term "bodily injury," must be read as follows:
The limit of liability shown in the declarations under Uninsured [or Underinsured] Motorists Coverage for "each person" is our maximum limit of liability for all damages, including damages for care, loss of services, or death, arising out ofbodily injury [including bodily harm, death, mental anguish,or loss of services, support or society] sustained by any oneperson in any one auto accident. Subject to this limit for "each person," the limit of Bodily Injury Liability shown in the declarations for "each accident" for Uninsured [or Underinsured] Motorists Coverage is our maximum limit of liability for all damages for bodily injury [including bodily harm, death,mental anguish, or loss of services, support or society] sustained by two or more persons resulting from any one accident. * * *
(Emphasis sic and emphasis added.)
 {¶ 22} Plaintiffs further contend that since Jason and each of his family members are insured persons who sustained bodily harm, death, mental anguish, or loss of services, support or society resulting from the accident, the definition of bodily injury imposed by operation of law unambiguously entitles each of them to recover up to the each person limit of either policy.
 {¶ 23} Contrary to plaintiffs' assertion, Moore is inapplicable. Moore did not address R.C. 3937.18(H), but rather construed R.C. 3937.18(A)(1), and thus it applies to situations where an insurer attempts to completely prohibit an insured, who does not sustain bodily injury, from collecting UM/UIM benefits. Here, Grange has not attempted to deny coverage to plaintiffs for their wrongful death and survivorship claims. Rather, Grange is attempting to limit its liability to the per person limits specified in the policies and as R.C. 3937.18(H) permits.
 {¶ 24} In Wallace, the Ohio Supreme Court addressed the application of Moore in deciding whether a husband and wife were "separately entitled to coverage up to the per-person limit of one of their underinsured motorist policies" or whether together they were limited to the per person limit for a single claim. Id. at 188. The court determined Moore was not controlling. Noting that Moore concerned the application of R.C. 3937.18(A)(1), the court reiterated that the issue in Wallace was not denial of coverage, but the application of policy limits; in other words, the issue was not who could recover under the policy, but how much could be recovered. SeeCampo v. Daniel, Cuyahoga App. No. 81419, 2002-Ohio-7257 at ¶ 14, 15, appeal not allowed (2003), 98 Ohio St.3d 1566.
 {¶ 25} Moreover, after Moore was decided, the Ohio Supreme Court, this court, and several other Ohio appellate courts, had the opportunity to construe insurance provisions containing liability limiting language, including the challenged term "bodily injury." None has applied the holding in Moore to define the term "bodily injury" as plaintiffs suggest. Indeed, all have found policy language similar to the liability limiting language in this case to clearly and unambiguously express an insurer's intent to limit the insurer's liability for derivative, survivorship and wrongful death claims to the per person limits of a policy. See Saunders v. Mortensen, 101 Ohio St.3d 86,2004-Ohio-24; Clark, supra; Greiner v. Timm (Mar. 28, 2000), Franklin App. No. 99AP-618, dismissed, appeal not allowed,89 Ohio St.3d 1466; Carroll v. Allstate Ins. Co.,148 Ohio App.3d 413, 2002-Ohio-3074; Justice v. State Farm Ins. Co. (2000),145 Ohio App.3d 359; Mejia v. Heimsch (June 25, 2001), Butler App. No. CA2000-12-242; Cross v. The Cincinnati Ins. Co., Adams App. No. 02CA758, 2004-Ohio-328; Campo, supra.
 {¶ 26} Accordingly, the language of each of the policies clearly and unambiguously, and in conformity with former R.C.3937.18(H), limits Grange's liability to the "each person" limit of $100,000 for all claims arising out of Jason's death.
 {¶ 27} Plaintiffs next assert that both the Bebout and Rinehart policies fail to clearly and unambiguously preclude the stacking of policy limits. Accordingly, plaintiffs claim that each of them is entitled to $200,000 of UM/UIM coverage, or $100,000 per policy, rather than $100,000 under only one policy.
 {¶ 28} Initially, we note that both policies do not contain identical anti-stacking provisions. The Rinehart policy includes the following "Other Insurance" provision:
If there is other applicable similar insurance available under one or more policy or provision of coverage:
1. Any recovery for damages for bodily injury sustained by aninsured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.
2. With respect to a vehicle not owned by you or a familymember, we will provide insurance only in the amount by which your limit of liability for this coverage exceeds the limit of liability for any other applicable insurance.
3. Otherwise, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.
4. The provisions of this section apply without regard to any premiums involved, and apply to vehicles owned by you, familymembers or others who are not family members.
 {¶ 29} The Bebout policy provides as follows regarding "Other Insurance":
If there is other applicable similar insurance available under one or more policy or provision of coverage:
1. The following priorities of recovery apply:
FIRST The policy affording Uninsured [or Underinsured] Motorists Coverage to the insured as a named insured or familymember.
SECOND The Uninsured [or Underinsured] Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident.
2. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all limits applicable on the same level of priority.
(Emphasis sic.)
 {¶ 30} We first address the "Other Insurance" provision contained in the Rinehart policy. In Hower v. Motorists Mut.Ins. Co. (1992), 65 Ohio St.3d 442, the Ohio Supreme Court considered a provision similar to that included in the Rinehart policy. In the first paragraph of the syllabus, the court held that such a provision was unambiguous and valid:
1. The language in an automobile insurance policy that "[i]f this policy and any other policy providing similar insurance apply to the same accident, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any policy" is not ambiguous and is a valid anti-stacking provision.
 {¶ 31} Although we recognize that the Ohio Supreme Court overruled Hower in Savoie v. Grange Mut. Ins. Co. (1993),67 Ohio St.3d 500 (invalidating insurance policy provisions that prohibit interfamily stacking), since the legislative overruling of Savoie, other appellate courts have returned to Hower for guidance. See Cross, supra, citing Campo, supra; Lemble v.Belknap (Sept. 30, 1999), Lucas App. No. L-98-1417.
 {¶ 32} In one such case, Harris v. Shy (May 12, 2000), Lucas App. No. L-99-1278, appeal not allowed, 98 Ohio St.3d 1418, Harris was injured in an accident while riding in a car Mary Ackerman operated. State Farm Mutual Automobile Insurance Company ("State Farm") insured Ackerman, and Grange insured Harris. Both policies contained UM/UIM coverage with limits of $100,000 per person and $300,000 per accident. Harris sought UM/UIM benefits under both policies, contending that the policies' anti-stacking provisions were vague and thus unenforceable. In considering the anti-stacking clause in the Grange policy, which is identical to that contained in the Rinehart policy, the court determined that the anti-stacking language of the provision tracked the dispositive language in Hower, and thus Harris concluded that the provision clearly and unambiguously precluded the stacking of insurance coverages.
 {¶ 33} Plaintiffs contend Harris does not apply to the instant case because it is not a wrongful death case and concerns interfamily stacking, not intrafamily stacking. Plaintiffs' argument is unpersuasive, as the noted distinctions are not pertinent to the analysis set forth in Hower. Accordingly, the "Other Insurance" provision in the Rinehart policy clearly, unambiguously and validly precludes the stacking of coverages.
 {¶ 34} We next consider the "Other Insurance" provision in the Bebout policy. At oral argument, Grange did not contend that this provision clearly and unambiguously precludes the stacking of coverages. The issue thus resolves to whether the valid anti-stacking language contained in the Rinehart policy precludes stacking coverage under that policy with the coverage contained in a policy that does not include enforceable anti-stacking language. Because the Rinehart policy requires that all other collectible UM/UIM coverage be exhausted, and assuming the Bebout policy pays out its limit, then the anti-stacking provisions of the Rinehart policy would apply to bar any additional coverage. As a result, the trial court properly refused to stack the coverages in the two Grange policies. Plaintiffs' first assignment of error is overruled.
 {¶ 35} By their second assignment of error, plaintiffs contend the trial court erred in concluding Grange is entitled to reduce the $100,000 UM/UIM coverage amount by $50,000, the amount of liability coverage available from Tindall's liability carrier. The issue involves former R.C. 3937.18(A)(2), which states in pertinent part:
* * * The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured.
 {¶ 36} In Littrell v. Wigglesworth (2001),91 Ohio St.3d 425, the Ohio Supreme Court considered consolidated appeals, one of which is styled Stickney v. State Farm Mut. Auto. Ins. Co.
In that case, Jennifer Stickney was killed in an automobile accident resulting from the negligence of Eric Semon. At the time of Jennifer's death, her father, mother and two siblings were insureds under two insurance policies State Farm issued. Each policy provided UM/UIM coverage with limits of $100,000 per person and $300,000 per occurrence.
 {¶ 37} The father received $125,000 from Semon's liability carrier toward his damages resulting from the death of his daughter. The mother and siblings received nothing from the settlement proceeds. The father contended that since the mother and siblings, as statutory wrongful death beneficiaries, did not share in the settlement proceeds received from the tortfeasor's liability carrier, they were entitled to recover UM/UIM benefits from the State Farm policies. State Farm argued that the $125,000 from the tortfeasor's liability policy was the amount available for payment applicable to all wrongful death claimants and was the amount that should be set off against the $100,000 per person limits of the State Farm policies.
 {¶ 38} The Supreme Court agreed with State Farm, holding that the $100,000 UM/UIM limit should be reduced by any payments collectively made to the entire family. The Supreme Court explained that "[i]n order to determine the amount of underinsured motorist coverage available to the wrongful death beneficiaries, we begin by determining the amount that those beneficiaries would have received had their losses resulted from the negligence of an uninsured motorist. There apparently is no dispute between the parties concerning the antistacking clause and the single per-person limit provision in the State Farm policies. The trial court granted summary judgment in favor of State Farm, and [the father] did not challenge the validity of these clauses on appeal. Thus, had [Jennifer] been killed by an uninsured motorist, the maximum amount that all wrongful death beneficiaries could have recovered in uninsured motorist benefits, according to policy language permitted by R.C.3937.18(H), would have been the $100,000 per-person limit of the State Farm policy. Pursuant to R.C. 3937.18(A)(2), underinsured motorist coverage is `provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage' had the tortfeasor been uninsured at the time of the accident. The amount awarded to [Jennifer's] personal representative for the benefit of the next of kin, $125,000, is the amount available for payment. Since this amount exceeds that which would be available under [the father's] uninsured motorist coverage, the wrongful death beneficiaries are not entitled to underinsured motorist benefits from State Farm." Id. at 433. (Emphasis sic.)
 {¶ 39} Plaintiffs nonetheless argue that Grange is entitled to a maximum setoff of $50,000 against the aggregate "each accident" limits of $600,000 under the two policies, or to pro tanto setoffs against each insured's individual UIM coverage limits in the amounts each insured actually recovers from the tortfeasor. Plaintiffs' argument is based upon the faulty premise that each insured is entitled to UIM coverage up to the "each person" limit of each of the policies, and that the policies may be stacked. We have determined, however, that, pursuant to the policies' anti-stacking and limits of liability provisions, Grange's liability under both policies is limited to $100,000 for all claims arising out of Jason's death. Accordingly, pursuant to former R.C. 3937.18(A)(2) and Stickney, the trial court did not err in determining that the $100,000 UM/UIM policy limit should be reduced by the $50,000 collectively available to plaintiffs under Tindall's liability policy.
 {¶ 40} Accordingly, plaintiffs' second assignment of error is overruled. Although plaintiffs also appealed from the summary judgment granted to a second insurance carrier, Hartford Insurance Company of the Midwest ("Hartford"), this court on January 22, 2004 granted plaintiffs' subsequent motion to dismiss the portion of their appeal directed to Hartford. Having overruled plaintiffs' first and second assignments of error, and plaintiffs having dismissed the portion of their appeal that included their third assignment of error directed to Hartford, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
Brown and Sadler, JJ., concur.